[No. G034533. Fourth Dist., Div. Three. Apr. 18, 2006.]

VENDER FAIRFAX, Plaintiff and Appellant, v.
DERIC LORDS, Defendant and Respondent.

**COUNSEL**

Hodges & Thomas, Robert R. Hodges and Richard F. G. Thomas for Plaintiff and Appellant.

Law Offices of Greer & Associates, C. Keith Greer and Steven J. Roberts for Defendant and Respondent.

## OPINION

**BEDSWORTH, Acting P. J.**—In this case, we conclude that "simultaneous" means "occurring at the same time." We recognize the folks at Merriam Webster reached that same conclusion some time ago, but in light of what occurred in this case, it apparently bears repeating.

Vender Fairfax appeals from an adverse judgment in his lawsuit for medical malpractice against Deric Lords, D.P.M. He argues the court erred in allowing Lords to unilaterally delay his designation of retained expert witnesses pursuant to Code of Civil Procedure former section 2034 (former section 2034) until 20 days after Fairfax had designated his own. He also contends the court erred in allowing Lords to designate, as one of his belated experts, a doctor who had previously consulted with Fairfax about the same injury at issue here, in connection with a prior case.

■ We agree with the first contention, and because we conclude that Lords's belated designation of retained experts should be stricken, we need not reach the second. Former section 2034 required a "simultaneous" exchange of information, in which each side must either identify any expert witnesses it expects to call at trial, or state that it does not intend to rely upon expert testimony. When it comes to issues that both sides anticipate will be disputed at trial, a party cannot merely "reserve its right" to designate experts in the initial exchange, wait to see what experts are designated by the opposition, and then name its experts only as purported "rebuttal" witnesses. Whether such a strategy is somehow beneficial to defendants, as Lords claims, is simply irrelevant. The trial court erred by acquiescing in it.

■ Moreover, we conclude the error was prejudicial. This was a case in which liability turned almost exclusively on the issue of whether Lords's treatment of Fairfax fell below the standard of care. The court's erroneous decision to allow Lords's belated designation of retained experts, rather than require him to rely upon testimony from one of the numerous treating professionals identified on his initial designation, likely had an impact on the outcome of the trial. Consequently, the case must be remanded for a new trial, during which Lords shall be restricted to relying upon the expert testimony of those treating professionals.

\* \* \*

Fairfax originally injured his right ankle in an accident in 1997. He obtained treatment for the injury from David Smalley, M.D., and in November of 1999, Smalley performed an ankle fusion. After the fusion, the ankle continued to be painful, and Fairfax sought further treatment, this time from Lords.

In November of 2000, Lords performed surgery just below Fairfax's ankle, including placement of screws across the subtalar joint. Fairfax continued to experience problems with the ankle, and in June of 2001, Lords performed a second surgery to remove some, but not all of the screws.

Thereafter, Fairfax commenced a lawsuit against Dr. Smalley in Riverside Superior Court, alleging Smalley had fused the ankle bones at an inappropriate angle.[1] In February of 2003, Fairfax sought the services of Kendall Wagner, M.D., to do two things. First, he was to act as an expert witness and consultant regarding the care provided by Smalley; and second, he was to consult with Fairfax's counsel in connection with his "investigation" of the care provided by Lords. Fairfax's counsel then delivered to Wagner the medical records from Dr. Smalley and Dr. Lords, concerning the treatment of Fairfax's ankle. Counsel later had at least one conversation with Wagner regarding Wagner's opinions about the treatment rendered by both Smalley and Lords. However, the lawsuit against Smalley was dismissed on summary judgment without Wagner offering any testimony.

In May of 2003, Fairfax filed the instant lawsuit alleging medical malpractice against Lords. As the case approached its scheduled trial date in June of 2004, Lords served a demand for exchange of expert witness information in compliance with former section 2034.

On April 19, 2004, Fairfax served his expert witness designation, naming Carol Frey, M.D., as a retained expert, and reserving his right to additionally call as witnesses all physicians and healthcare providers who had treated Fairfax.

On that same date, Lords served a document he called his "First Designation of Expert Witnesses." Despite that caption, however, Lords's document identified no retained witnesses, stating instead that he "hereby gives notice that he is not designating any retained experts for the first exchange of expert witness information." He went on to state, however, that he "expressly reserves the right to designate experts in rebuttal to [Fairfax's] designations." Lords did specifically list 26 treating physicians and other healthcare professionals who had examined or rendered treatment to Fairfax, but did not state that he expected any of them to testify. Instead, he merely stated that he also "reserve[d] the right to call [them] as expert witnesses."

After receipt of Fairfax's designation, Lords's counsel made arrangements to retain an expert witness to counter the expected testimony of Frey. He

---

[1] Appellant has filed a motion to take judicial notice of certain facts relating to the Riverside Superior Court action. Having received no opposition, the motion is granted.

retained Richard B. Viehe, a podiatrist. Then, on either May 7 or 10, 2004, he contacted Dr. Wagner.[2] During his initial conversation with Lords's counsel, Wagner informed him that he believed he had previously been contacted by Fairfax's counsel in connection with prior litigation with Smalley, but was willing to serve as an expert for Lords.

Lords's counsel acknowledges he immediately recognized "the potential conflict" and contacted Fairfax's counsel. He claims that "in order to ensure strict compliance with all ethical obligations, [he] ceased all contact with Dr. Wagner pending resolution [of the conflict issue.]" He explains that it was only after speaking with Fairfax's counsel, and satisfying himself that no confidences or work product had been disclosed to Wagner, that he designated Wagner as an expert witness. However, the only evidence of the initial conversation between counsel comes from Fairfax's attorney, who declared that he had merely confirmed the prior consultation with Wagner, while refusing to disclose its content.

In any event, on May 10, 2004—either the very same day Lords's counsel had initially contacted Wagner, or the first business day thereafter, Lords went ahead and designated him as an expert witness. The designation, which Lords characterized as his "Second Designation of Expert Witnesses," named both Wagner and Viehe as retained experts. In the document, Lords also asserted that "[s]ince plaintiff has the burden of proof as to all issues, defendant reserves the right . . . to provide a supplemental designation of experts regarding all issues for which plaintiff designates an expert."

Almost immediately, Fairfax protested the designation, and several letters were exchanged between counsel. Fairfax also moved, ex parte, for an order striking Lords's second designation. The court denied the ex parte motion without prejudice, and advised Fairfax that the issue of disqualification could be raised by a motion in limine.

On June 3, 2004, Fairfax filed his motion in limine to strike Lords's second designation of experts, arguing both that the designation of the retained experts was untimely, and that Wagner, having previously consulted with Fairfax's counsel about the adequacy of the care he had received from both Smalley and Lords, was precluded from testifying on behalf of Lords. With respect to the latter issue, Fairfax's counsel submitted declarations indicating that during the pendency of the prior case against Smalley, he had a conversation with Wagner in which "we discussed his opinions regarding the care and treatment plaintiff received from both Drs. Smalley and Lords."

---

[2] Fairfax's counsel declared he was originally notified that Lords's counsel had contacted Wagner on Friday, May 7, 2004. Lords's counsel recalls that initial contact as occurring on Monday, May, 10. 2004.

In his opposition to the motion to strike, Lords defended his failure to designate any retained experts in his so-called first designation, claiming that he had fully participated in the exchange by listing the numerous treating physicians and other healthcare professionals whom he "reserved the right to call," while waiting to select and designate retained experts only after receiving Fairfax's own designation. He further argued that his designation of Wagner as an expert was not only proper, but necessary, as he "is the only other orthopedic surgeon of sufficient renown and fairness to counter [Fairfax's] expert, Carol Frey, M.D., who has a well established bias adverse to podiatrists in this community . . . ."[3] Lords offered no evidence in his opposition to contradict the description given by Fairfax's counsel concerning his prior communications with Wagner.

At oral argument on the motion in limine, Fairfax's counsel suggested that in a medical malpractice case, in which defendant's failure to comply with the standard of care is a necessary element of the claim, the defendant cannot avoid a simultaneous exchange by labeling his expert on that key issue as merely a "rebuttal" witness. Counsel also focused specifically on Lords's designation of Wagner, emphasizing that their earlier conversation with Wagner in connection with the prior case had not been confined to Wagner's expression of his opinions. As counsel explained, "We did discuss both surgeries with Dr. Wagner. We gave him our thoughts and our impressions concerning both of the surgeries. [¶] And I think the law is clear that this is attorney work product."

Lords's counsel reiterated in his oral argument that the mere service of a document naming potential expert witnesses (the 26 treating professionals) amounted to "participat[ion]" in the initial exchange, and thus guaranteed Lords the right to identify any retained experts he chose to hire as "rebuttal" witnesses. He explained that requiring defendants, who have no burden of proof, to spend money retaining experts on issues which plaintiff might choose not to pursue is a hardship, and thus, "[w]e see what they are going to designate and then we counterdesignate by issues."

With respect to the propriety of designating Wagner specifically, Lords's counsel argued there was no evidence that "confidential information" was given to Wagner: "Counsel is given an opportunity to say why would it be an unfair advantage, what confidential information is given here. And in Mr. Moody's declaration, [it] said he was given the records to look at and the

---

[3] We would have thought there would be more than one witness of sufficient "renown and fairness" to counter someone who has a "well established bias adverse to podiatrists . . ." in a community as large as Southern California.

witness gave their opinion. There's no . . . communication of confidential information from the attorney to the expert in the giving of records from the adversary."

The court denied the motion to exclude the experts designated by Lords, although it acknowledged the issue of whether to allow Wagner to testify was a close one. The case proceeded to trial, and Wagner was the only expert witness relied upon by Lords. The jury returned a verdict in favor of Lords, and judgment was entered in his favor.

Fairfax first contends Lords violated the requirements of former section 2034, specifying the requirements for exchange of expert witness information, and that the trial court erred in allowing him to do so. We agree.

Former section 2034, subdivision (a)(1) expressly contemplated a "a mutual and simultaneous exchange by all parties of a list containing the name and address of any natural person [whose] expert opinion any party expects to offer in evidence at the trial." Subdivision (f) of former section 2034 stated, in pertinent part, that "[t]he exchange of expert witness information shall include either of the following: [¶] (A) A list setting forth the name and address of any person whose expert opinion that party expects to offer in evidence at the trial. [¶] (B) A statement that the party does not presently intend to offer the testimony of any expert witness."

Subdivision (h) of former section 2034 allowed any party who engaged in the initial exchange to supplement his or her list: "Within 20 days after the exchange described in subdivision (f), any party who engaged in the exchange may submit a supplemental expert witness list containing the name and address of any experts who will express an opinion on a subject to be covered by an expert designated by an adverse party to the exchange, if the party supplementing an expert witness list has not previously retained an expert to testify on that subject."

As Fairfax points out, Lords's initial expert witness exchange did neither of the things required by subdivision (f)—it neither listed any experts that he "expected" to call as witnesses, nor did it state that he had no present intention to offer expert testimony. Instead, Lords expressly declined to name any retained experts in the initial exchange, while "reserv[ing] the right to designate experts in rebuttal to [Fairfax's] designations." He did list 26 treating physicians and other healthcare professionals, but none of them was designated as an "expected" witness. Lords merely "reserve[d] the right to call [them] as expert witnesses." The list includes not a single name of any witness Lords "expected" to call.

However, once Lords saw Fairfax's expert list, which included one retained witness, he responded with his own "rebuttal" list of two retained experts.

The effect of Lords's expert designation was to delay his own list of "expected" witnesses until after he had seen the list put forth by Fairfax. Lords does not deny that this was his express intent, and instead argues it is only "prudent" for a defendant to do so.

According to Lords's reasoning, "[s]ince plaintiff had the burden of proof on all issues presented here . . . it is simply prudent litigation defense practice to minimize the cost of litigation by allowing plaintiff to declare the issues he intends to retain experts for, and for the defense to then offer appropriate rebuttal experts. Some plaintiffs designate economists, accountants, accident reconstructionists, vocational rehabilitationists, physical therapists, pain management specialists and various types of physicians practicing in different areas. . . . [¶] It would serve no purpose for the defendant to designate the myriad types of experts in the first designation, thereby driving up the cost of litigation, only to later find out plaintiff took a more simple approach to the case and thus certain defense experts were prepared in vain. It would also be poor litigation strategy for the defendant to declare one type of healthcare provider for an issue, and thus be foreclosed from designating another expert on the same topic, prior to knowing what type of expert plaintiff has chosen."

There are two significant problems with Lords's reasoning. First, he seems to be assuming there is no way for defendant to determine what claims are at issue in a particular case until plaintiff reveals his expert witness list. That is simply untrue.

The complaint itself is a rich source for determining what claims are at issue. In the instant case, for example, the complaint specifies a claim for medical malpractice. That should put defendant's mind at rest concerning the potential need for an "accident reconstructionist." As for the other potential issues listed by Lords, ordinary discovery is available to determine whether, for example, plaintiff is claiming lost wages, and if so, whether the calculation of such wages is subject to dispute; whether plaintiff is truly disabled from performing his (or other suitable) work; whether plaintiff has undergone physical therapy (or should have); and whether plaintiff has undergone (or might have been helped by) pain management. Reasonably competent defense counsel is not at risk of expending large amounts on issues like these because he cannot ascertain the nature of plaintiff's claims.

The second, and more fundamental problem with Lords's argument is that it is simply inconsistent with the clear statutory requirement of a "simultaneous" exchange. Even if we agreed that defendants' interests would be

better served by a system which allowed them to designate experts only *after* seeing plaintiffs' list (and it would be difficult to dispute the point), that is simply not an appropriate basis for ignoring the requirements of the statute. By Lords's reasoning, we could also agree that defendants might be well served by a system which relieved them of any obligation to even respond to a complaint until plaintiff had proved his prima facie case at trial. After all, if plaintiff doesn't have the goods, why require a defendant to spend even a dime? But that is not the law, and it is not our place to conclude it should be.

To be clear, this is not a situation in which Lords was somehow surprised by the content of Fairfax's expert designation. Fairfax designated only one retained expert, to address the only real disputed issue in this case—i.e., whether Lords's treatment of Fairfax complied with the standard of care. Because Lords had every reason to anticipate such a designation, he had a corresponding obligation to designate whatever expert he expected to have testify on the issue *at the same time.* The fact that Fairfax designated a medical doctor, rather than a podiatrist, to testify on the issue is of no significance. Parties presumably designate the expert they believe best qualified to opine on the applicable standard of care; if Lords believed there was a significant difference between a medical expert and a podiatric expert for purposes of this case, he could have designated one of each, as he subsequently attempted to do.

Our system requires that defendants participate in the litigation essentially simultaneously with plaintiff. Former section 2034 *expressly* required it with respect to expert designations. If Lords would like to see that requirement changed, his remedy is with the Legislature, not the courts.

We therefore conclude the court erred in denying Fairfax's motion to strike Lords's "second designation" of expert witnesses. The motion should have been granted, as Lords had no right to simply delay his designation of retained experts until after he had the opportunity to view the designation timely served by Fairfax. The court should have granted the motion and left Lords to rely exclusively on those treating professionals listed in his initial designation.

Additionally, we reject Lords's suggestion the error was not prejudicial. This case turned on the issue of whether the jury believed Lords's treatment of Fairfax had fallen below the applicable standard of care. Fairfax had an expert witness who opined that it had. Although Lords contends her opinion was entirely undermined during cross-examination, the record clearly suggests the jury did not see it that way. After having heard both her testimony and that of Dr. Wagner, the jury engaged in significant deliberations, over the course of two days, during which it sent out several questions to the court

and sought a transcript of certain testimony. At the end of those efforts, the verdict was not unanimous in Lords's favor. Under these circumstances, we could not conclude an order precluding Lords from offering the testimony of his retained experts would not have affected the verdict in this case.

Consequently, the judgment is reversed, and the case remanded for a new trial. In connection with that new trial, the court is directed to strike Lords's "second designation" of expert witnesses. Lords shall be limited to offering expert opinion testimony from only the professionals identified in his initial expert designation.[4] Fairfax shall recover his costs on appeal.

O'Leary J., and Ikola, J., concurred.

A petition for a rehearing was denied May 16, 2006, and respondent's petition for review by the Supreme Court was denied July 12, 2006, S143799.

---

[4] The disposition makes it unnecessary to address the trial court's troubling decision to allow Dr. Wagner to testify against Fairfax with regard to the very same issue Fairfax had previously retained him to evaluate.