Filed 4/18/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DU-ALL SAFETY, LLC,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>     Respondent,<br><br>MARK KREIN et al.,<br><br>     Real Parties in Interest. | A155119<br><br>(Alameda County<br>Super. Ct. No. RG16833067) |

Defendant Du-All Safety, LLC (Du-All) timely filed its expert witness disclosure pursuant to the Code of Civil Procedure,[1] identifying two experts it expected to call at trial. Plaintiffs' expert disclosure identified two experts to testify as to the same subjects as Du-All's experts, and also five more experts in other subjects. Du-All filed a supplemental disclosure identifying five experts in those fields. Plaintiffs moved to strike the supplemental disclosure and exclude the experts, and the trial court agreed in most part, ruling that four of the experts could not testify. Du-All filed a petition for a writ of mandate directing the superior court to vacate its order, arguing that the court abused its discretion in granting the motion. We agree with Du-All, and we grant the petition.

---

[1] All statutory references are to the Code of Civil Procedure.

# BACKGROUND

## Proceedings in the Trial Court

On March 2, 2017, plaintiffs Mark Krein and his wife Lori Krein (when referred to collectively, plaintiffs) filed their first amended complaint, the operative complaint here (complaint). It named 12 defendants: Du-All; Alricks Steel, Inc.; Tuolumne County Engineering Consultants, Inc.; Darrhl I. Dentoni & Associates; Kjeldsen, Sinnock & Neudeck, Inc.; V.J. Gretzinger, P.E.; Eugene Weatherby, P.E.; Gretzinger & Weatherby; R.W. Siegfried & Associates; Siegfriend Engineering, Inc.; Schelin Associates, Inc.; and Robert D. Moore Construction Co., Inc.

The complaint was based on an accident in November 2015, when Mark Krein, an employee of Tuolomne Water District, fell from a bridge at his place of employment and "sustained paraplegic injuries." The thrust of the charging allegations were these:

— In 1974, defendant Robert D. Moore Construction Co. contracted to build a wastewater treatment plant for Tuolumne County Water District No. 2, which plant included two digester tanks that reduced the concentration of solids in wastewater. The construction contract required the construction and installation of a galvanized steel foot bridge (The Bridge) between the digester tanks pursuant to specifications, including longitudinal supporting beams of trusses. And "Defendants, and each of them, designed, approved, manufactured, and inspected The Bridge."

— In February 2002, Du-All contracted to periodically inspect the wastewater treatment plant, including The Bridge and its related equipment, and did not exercise reasonable care to identify any violations or hazardous conditions of The Bridge or recommend any corrective action for it, which omissions increased the risk of harm to Mark Krein, other employees of the Tuolumne Utilities District, and the public.

— In November 2015, Mark Krein (who had worked for the district since 2007) was walking on The Bridge when the floor gave way, and he fell "because The Bridge including its related equipment, component parts, and constituents were defectively designed, constructed, manufactured, and inspected. Neither the defendants nor The

Bridge provided any notice or warning to plaintiff Mark Krein of any risk of personal injury."

The complaint alleged seven causes of action, only two of which included Du-All as a defendant: the first, for general negligence, and the seventh, for loss of consortium. The other five causes of action were product liability claims, all alleged against the other eleven defendants.

Many of the defendants filed answers to the complaint, including, as pertinent here, Du-All, whose answer was filed on March 17, 2017. That answer is not in the record, and neither are any of the other pleadings filed in the next 12 months, and we glean what occurred in the case from the register of actions, which, we note, does not meaningfully describe most of the pleadings. As best we can tell, what occurred included this:

— A case management conference scheduled for May 18, 2017, apparently continued to May 19, and then to May 24, at which the case was set for jury trial for May 14, 2018. The court also ordered the case to private mediation.

— Various dismissals were filed.

— A motion for good faith settlement was filed on February 14, 2018, which motion was granted on March 15. Another such motion was filed on April 9, which was granted on May 17. Thus, it appears that by May 2018 at least eight of the defendants had been removed from the case, no fewer than six by dismissal and two by good faith settlements. Whether any defendant beyond Du-All remained in the case is not apparent.

Meanwhile, on March 7, 2018, Du-All filed a motion to continue the trial, set for hearing on March 15. According to a later-filed stipulation, the court heard the motion to continue on March 15, but deferred ruling on it until the April 27 case management conference. Then, on March 16, counsel for plaintiffs and Du-All filed a stipulation, with an order signed by the court, continuing the trial to June 25.

We close our brief discussion of what occurred in the case with an observation of what did not occur—discovery disputes. That is, review of the 28-page register of actions shows that between November 2016, when the complaint was served, and

3

mid-May 2018, the only motion involving discovery was plaintiffs' motion for relief from waiver for failing to make objections to written discovery. No motion to compel was filed by any party.[2] Put otherwise, from all indications all parties, including Du-All, fully complied without compulsion in any discovery in which it was involved, demonstrating that at all times Du-All and its counsel apparently acted cooperatively and appropriately. And without gamesmanship.

That gets us to May 2018, and the issue here.

On May 7, Du-All served its expert witness disclosure, identifying the two experts it "expected" to call at trial: (1) a health and safety management consultant, and (2) a structural engineer.

On May 7, plaintiffs served their expert witness disclosure, also identifying a safety consultant and a structural engineer. In addition, plaintiffs disclosed five other experts to testify on various topics, as follows: (1) Tracy Albee, a registered nurse and life care planner, to testify regarding past and future injury-related needs and costs; (2) Digby Macdonald, a chemist, to testify to the effects of rust and corrosion; (3) Robert Johnson, a forensic economist, to testify to past and future economic losses; (4) Dr. Ted Scott, a physiatrist, to testify to damages and injuries and their cause and effects; and (5) Scott Simon, a vocational rehabilitation consultant, to testify to functional limitations and need for assistance. That same day, plaintiffs produced their life care plan.

Following receipt of plaintiffs' expert disclosure and the life care plan, Du-All determined that supplemental experts would be necessary, and it retained several supplemental experts to rebut the anticipated testimony of the experts disclosed by plaintiffs. And on May 25, pursuant to section 2034.280, Du-All served its supplemental expert disclosure, listing the following five experts: (1) Darko Babic, a rust expert engineer, to respond to plaintiffs' expert MacDonald; (2) Carol Hyland, a life care planner, to rebut the reasonableness of the life care plan created by plaintiffs' expert Albee; (3) Mark Newton, an economist, to rebut plaintiffs' expert Johnson as to past and

---

[2] The only motion to compel was filed after mid-May, filed *by* Du-All.

4

future economic losses; (4) Jill A. Moeller, a vocational rehabilitation consultant, to rebut plaintiffs' expert Simon on issues of functional limitations and need for assistance; and (5) Dr. Maureen D. Miner, a physiatrist, to rebut plaintiffs' expert Scott on the nature and extent of Mark Krein's damages and injuries, including the cause and effect of those injuries.

On June 4, pursuant to an order shortening time, plaintiffs filed a motion to strike Du-All's supplemental disclosure, setting the hearing for June 7. Plaintiffs argued that Du-All should have disclosed the experts identified in the supplemental disclosure in its original disclosure because these types of experts are commonly used in personal injury cases. And, plaintiffs argued, Du-All engaged in "gamesmanship" and, moreover, plaintiffs were prejudiced by the supplemental expert disclosure, but citing in claimed support only Du-All's "concern that it would be difficult to schedule the initially-designated expert depositions before trial. . . ."

On June 4, the same day on which plaintiffs filed their motion to strike, Du-All filed a motion to continue the trial date because discovery, both non-expert and expert, had not been completed—indeed, that expert discovery had not even begun.

On June 6, Du-All filed its opposition to the motion to strike and a supporting declaration, stating that the supplemental experts were just that, experts retained after receipt of plaintiffs' expert disclosure. And, counsel for Du-All declared, there was no "gamesmanship" involved in its supplemental expert disclosure.

On June 7, three days after Du-All filed its motion to continue the trial—and the day Du-All's motion was set for hearing—the parties stipulated to continue the trial date to October 29. The stipulation was entered into before the hearing on plaintiffs' motion to strike, and was based on the parties' desire to accommodate a mutually convenient date for the deposition of plaintiff, the orderly depositions of expert witnesses, and the completion of certain expert testing. The stipulation further agreed that expert discovery was to remain open until 30 days before the newly-agreed-to trial date.

The same day, June 7, the court held a hearing at which various matters were discussed. The first was Du-All's discovery motion (see fn. 2, ante), on which the court

5

ruled for Du-All. The court then granted the motion to continue the trial, resetting it to October 29. The final item was the issue of "the experts," the entirety of which is reflected in fewer than three pages of the reporter's transcript. It was as follows:

Following confirmation that counsel had nothing to add to their papers, this brief colloquy occurred:

"THE COURT: All right. It's abundantly clear to me that the defendant failed to comply with the simultaneous rule in disclosing experts . . . for life care or life planning, for vocational rehab, and for someone that's going to be talking about the nature and extent of the Plaintiff's injuries. Those three experts Carol Highland [*sic*], Jill Moeller, and Dr. Minor may not be expert witnesses in this case because they are not disclosed. . . . [¶] . . . [¶] Darko Babic may testify as it's not necessary—even though the case really does have the component where rust and corrosion is an important aspect and everybody has known it for a long time, the fact that the—those kind of issues—one might have presumed reasonably on the defense side that the structural engineer expert on both sides would go into that and it might have—it's certainly possible that it might have been news that a chemist was going to be testifying for the other side on the issue of rust and corrosion, and so I think that it is reasonable, although I see it as a close issue frankly. It's reasonable to have that expert testify and be named in the supplemental declaration for experts. That would be my view after having read the paperwork.

"MR. SHANAGHER [counsel for Du-All]: Couple of comments, your Honor?

"THE COURT: I already made my decision, I don't know what you're going to comment for. You don't get to try to talk me out of it at this point.

"MR. SHANAGHER: Okay. All right. Fair enough. The only thing that was not clear, was there was one other expert. I think that you mentioned Miller, Minor, and Highland [*sic*].

"THE COURT: Yes.

"MR. SHANAGHER: But not Mark Newton the economist?

"THE COURT: Oh, no, the economist has to go too. You knew—you had to have known that—that, one, the other side was going to have an economist and that you

6

should have an economist, too.  The statement opening the *Fairfax*[3] case applies in this case.

"MR. SHANAGHER:   We respectfully disagree with, your Honor.

"THE COURT:   All right."

On July 5, Du-All filed a motion for reconsideration based on a new fact, the four-month trial continuance.  The motion argued that the trial did not take into consideration its order granting the continuance, which eliminated any possible prejudice plaintiffs may claim, and, further, that the parties still had not commenced expert discovery.

On July 25, plaintiffs filed their opposition, relying on *Fairfax, supra,* 138 Cal.App.4th 1019, to argue Du-All should have identified the supplemental expert witnesses in its original disclosure.  Plaintiffs did not identify any actual prejudice they sustained, instead arguing that the supplemental designation was "inherently prejudicial."

Du-All filed a reply, and on August 7, the trial court denied Du-All's motion for reconsideration in a one-line order, providing no reason for its denial.

**Proceedings in This Court**

On August 23, 2018, Du-All filed in this court a petition for peremptory writ.  We asked for opposition, and on September 4 plaintiffs filed it, 47 pages of opposition to be exact.

On September 26, we issued an alternative writ of mandate, in an order that began as follows:  "The court has conducted a detailed review of the record and the parties' briefing regarding this petition.  It appears respondent superior court erred when it granted, in part, real parties' motion to strike petitioner's supplemental expert witnesses timely disclosed on May 25, 2018.  [¶]  Therefore, let an alternative writ of mandate issue commanding respondent Alameda County Superior Court . . . to set aside and vacate its June 22, 2018, order granting, in part, real parties' motion to strike petitioner's supplemental expert witnesses, and, instead, to issue a new and different order denying

---

3 *Fairfax v. Lords* (2006) 138 Cal.App.4th 1019 (*Fairfax*).

7

that motion in its entirety, or, in the alternative, to appear and show cause before Division Two of this court why a peremptory writ of mandate should not be granted."

Despite our order, on October 12, plaintiffs filed their return to the writ.

On October 16, counsel for Du-All filed in this court "Notice of Respondent Court's Compliance" with our alternative writ, attaching a copy of an October 16 order signed by the trial court denying the motion.

On November 9, counsel for plaintiffs filed in this court an order signed by the trial court indicating that the court had granted plaintiffs' motion for "reconsideration or to vacate," and had vacated its October 16 order denying the motion to strike and reinstated the order granting the motion to strike.

On December 13, Du-All filed its traverse. We set the petition for oral argument, which was held. And we now grant the petition for mandate.

## DISCUSSION

### The Standard of Review

We generally review a trial court's ruling on a motion to exclude expert testimony for abuse of discretion. (*Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 950.) But a trial court's discretion is always delimited by the statutes governing the particular issue, and "when the exclusion of expert testimony rests on a matter of statutory interpretation, we apply de novo review." (*Mateel Environmental Justice Foundation v. Edmund A. Gray Co.* (2003) 115 Cal.App.4th 8, 25.)

We discussed the subject of discretion at length in *People v. Jacobs* (2007) 156 Cal.App.4th 728, in the setting where the court had denied defendant's request for a two-day continuance so he could be sentenced by the trial judge. Finding an abuse, we described what it meant, a description that included a quotation from *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 (*Drew*). This is what we said:

"Elaborating, the Court of Appeal further explained: 'Very little of general significance can be said about discretion. " 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no

8

reasonable basis for the action is shown. [Citation.]' " (*Westside Community for Independent Living, Inc. v. Obledo* (198[3]) 33 Cal.3d 348, 355, citing to 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 244.) The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion. [Citation.]' (*Drew, supra*, 207 Cal.App.3d at p. 1297.) Finally, as *Drew* noted, the 'legal principles that govern the subject of discretionary action vary greatly with context. [Citation.] They are derived from the common law or statutes under which discretion is conferred.' (*Id.* at p. 1298.)" (*People v. Jacobs, supra,* 156 Cal.App.4th at p. 737.)

And we continued: "Various other cases are to the same effect, including *Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 831, fn. 3 ('[a]lthough an act exceeding the bounds of reason manifestly constitutes an abuse of discretion, abuse is not limited to such an extreme case'); *County of Yolo v. Garcia* (1993) 20 Cal.App.4th 1771, 1778 ('range of judicial discretion is determined by analogy to the rules contained in the general law and in the specific body or system of law in which the discretionary authority is granted'); see generally *Hurtado v. Statewide Home Loan Co.* (1985) 167 Cal.App.3d 1019, 1021–1026, overruled on other grounds in *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479.

"In *Concord Communities v. City of Concord* (2001) 91 Cal.App.4th 1407, 1417 our colleagues in Division Four of this court observed that 'Abuse of discretion has at least two components: a factual component . . . and a legal component. [Citation.] This legal component of discretion was best explained long ago in *Bailey v. Taaffe* (1866) 29 Cal. 422, 424: "The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . ." '

9

"All this is well described in Witkin where, likewise citing the still vital *Bailey v. Taaffe, supra*, 29 Cal. 422, 424, the author distills the principle as follows: 'Limits of Legal Discretion. [¶] The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. (See 5 Am.Jur.2d, Appellate Review § 695.) . . .' (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 358, pp. 406–407.)

"Applying these concepts here leads us to conclude that Judge Kroyer's refusal to continue the sentencing for two court days was an abuse of discretion." (*People v. Jacobs, supra*, 156 Cal.App.4th at pp. 737–738.)

Likewise the trial court's ruling here.

**Striking the Experts on the Supplemental Disclosure Was Error: Du-All Complied With the Discovery Statutes**

Under section 2034.210, subdivision (a), a party may demand a mutual and simultaneous exchange of each expert witness that any party "expects to offer in evidence at . . . trial." And section 2034.260, subdivision (b)(1), requires an expert witness disclosure to list every expert "that the party expects to offer" in evidence at trial. Du-All did that, identifying the two experts it intended to call, a health and safety management consultant safety and a structural engineer.

The statutory scheme provides that following review of the experts the other side has disclosed, a party may file a supplemental expert witness disclosure. This is under section 2034.280, which provides that "[w]ithin 20 days after the exchange described in Section 2034.260, any party who engaged in the exchange may submit a supplemental expert witness list containing the name and address of any experts who will express an opinion on a subject to be covered by an expert designated by an adverse party to the exchange, if the party supplementing an expert witness list has not previously retained an expert to testify on that subject."

There is no dispute that Du-All timely and simultaneously designated its initial experts. And also no dispute it timely designated its rebuttal experts in the same fields as

10

plaintiffs' initially designated experts.  In short, Du-All complied with the express language of the expert designation statutes.  That ends it.

The California Judges Discovery Benchbook is one of the four benchbooks that provides "practical working tools to enable a judge to conduct civil proceedings fairly, correctly, and efficiently.  They are written from the judge's point of view, giving the judge concrete advice on what to look for and how to respond."  (California Judges Benchbook:  Civil Proceedings—Discovery (CJER 2d ed. 2012) p. v.)  This is what that practical guide says about the "Supplemental Exchange":

"A party that has participated in the exchange of expert witness lists may supplement its list without a court order, provided that (CCP § 2034.280)

"● It submits its supplemental list to the other parties within 20 days after the exchange.

"● Any newly designated expert will express an opinion only on a subject to be covered by an expert designated by an adverse party.

"● It has not previously listed any expert witness on that subject.

"● The supplemental list is accompanied by an expert witness declaration . . . .

"● It makes each newly designated expert immediately available for a deposition."  (California Judges Benchbook:  Civil Proceedings—Discovery (CJER 2d ed. 2012) § 23.23, pp. 473–474.)

Du-All met those criteria here.

A leading California treatise on discovery describes "Supplementing Expert Witness Information" this way:  "**Second Thoughts**:  As the trial date draws near, the litigants sometimes will change their minds about the need for expert testimony.  One party may initially decide that a particular aspect of the case does not require expert testimony.  Then, the initial exchange of expert witness information reveals that another party has designated one or more experts to testify in this area.  This may cause the party who has not listed an expert to decide that the safer course is to retain one.  Section 2034.280 offers a way to effectuate this change of mind.  It provides a window of opportunity after the initial exchange during which a party may have a *right* to make a

supplemental expert witness designation.  In this respect *supplementation* of an expert witness under Section 2034.280 is different both from *augmenting* an expert witness list and from making a *tardy* submission of one.  These latter steps are not a matter of right; they require leave of court." (1 Hogan & Weber, Cal. Civil Discovery (2d ed. 2005) Expert Witness Disclosure, § 10:11, pp. 10-32 to 10-33, footnotes omitted.)

The leading practice treatise puts it similarly:  "**Supplemental expert witness lists:**  Sometimes, the exchange reveals that one party plans to call experts on subjects the opposing party assumed would *not* require expert testimony.  In such cases, the opposing party has the *right* to *supplement* its expert witness exchange by adding experts *to cover subjects on which the other party indicates it plans to offer expert testimony*, and on which the opposing party had not previously retained an expert to testify." (Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2018) ¶ 8:1686, p. 8J-18.)

In short, Du-All had a *right* to do what it did.  And the trial court's order was error, especially as Du-All complied with its disclosure obligations, there is no indication it acted unreasonably or engaged in gamesmanship, and there was no prejudice to plaintiffs.

The trial court's ruling here reads into the statute obligations that do not exist:  that a party must not only initially disclose every expert witness it expects to call at trial, but also every expert witness it anticipates using to rebut the experts the other side might designate as an expert.  This interpretation is not supported by the plain language of section 2034.210, which requires only that a party designate the experts it expects to call at trial.  Indeed, if plaintiffs' interpretation were correct, there would be no need for section 2034.280.  In short, the Legislature contemplated that when a party designates an expert, it is possible the other side might want to designate a rebuttal expert on the same topic.

*Staub v. Kiley* (2014) 226 Cal.App.4th 1437 (*Staub*) is persuasive.  There, in a medical malpractice case, the trial court granted defendants' in limine motion precluding plaintiffs' expert witnesses from testifying, on the ground plaintiffs unreasonably failed

12

to timely disclose their designated experts, and then entered judgment for defendants following their successful motion for nonsuit. (*Id.* at pp. 1442–1444.) The Court of Appeal reversed, first concluding that defendants lacked standing to seek to exclude the testimony because they themselves failed to comply with section 2034.260. The Court then went on with the following observations:

"Even if defendants did have standing to bring a section 2034.300 motion, plaintiffs cannot be said to have unreasonably failed to comply with defendants' expert witness demand, so as to justify excluding plaintiffs' experts' testimony. Although section 2034.300 does not provide explicit guidance as to how a court should decide if the party's failure was reasonable or unreasonable, the record does not support the trial court's implicit conclusion that plaintiffs behaved so unreasonably as to warrant exclusion of their experts' opinion testimony.

"Failure to comply with expert designation rules may be found to be 'unreasonable' when a party's conduct gives the appearance of gamesmanship, such as undue rigidity in responding to expert scheduling issues. (*Stanchfield v. Hamer Toyota, Inc.* (1995) 37 Cal.App.4th 1495, 1504.) The operative inquiry is whether the conduct being evaluated will compromise these evident purposes of the discovery statutes: ' "to assist the parties and the trier of fact in ascertaining the truth; to encourage settlement by educating the parties as to the strengths of their claims and defenses; to expedite and facilitate preparation and trial; to prevent delay; and to safeguard against surprise." ' (*Id.* at p. 1504 [holding that the court did not abuse its discretion in allowing expert testimony].)" (*Staub, supra,* 226 Cal.App.4th 1446–1447.)

Then, following discussion of *Zellerino v. Brown* (1991) 235 Cal.App.3d 1097 (*Zellerino*), which disallowed the experts because the conduct amounted to " 'a comprehensive attempt to thwart the opposition from legitimate and necessary discovery' " (*Staub, supra,* 226 Cal.App.4th at p. 1447), the court continued: "The record here does not support a determination that plaintiffs so unreasonably failed to timely disclose their experts that exclusion of all expert testimony was warranted. Neither plaintiffs nor their counsel engaged in actions that can be characterized as

13

gamesmanship, nor did they engage in a 'comprehensive attempt to thwart the opposition from legitimate and necessary discovery,' justifying exclusion of evidence. (*Zellerino, supra*, 235 Cal.App.3d at p. 1117.)" (*Ibid.*)

After all that, the *Staub* court added this: "Our conclusion in this regard is bolstered by the fact that the order excluding plaintiffs' experts from testifying at trial was in effect a terminating sanction, as it eviscerated plaintiffs' case. The 'general rule [is] that a terminating sanction may be imposed only after a party fails to obey an order compelling discovery . . . .' (*New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1426.) Here, there was no history of discovery abuse by plaintiffs which would warrant the imposition of a terminating sanction. This case is not remotely on a par with the type of case in which a sanction of this type is warranted. (Cf. *Zellerino, supra*, 235 Cal.App.3d at p. 1117 ['near-total failure' to comply with requirements of expert disclosure statute].)" (*Staub, supra,* 226 Cal.App.4th at p. 1448.)

While the effect here might not be a nonsuit, to force Du-All to defend against the testimony of plaintiffs' four experts without experts of its own could be said to "eviscerate" its defense, at least to the extent of the issues on which the experts would testify.

*Fairfax, supra,* 138 Cal.App.4th 1019, the case primarily relied on by plaintiffs— and the one case cited by the court in its brief holding—is easily distinguishable. *Fairfax* was a medical malpractice case against a podiatrist. Defendant served a demand for the exchange of expert witness information, and plaintiff timely designated a retained expert, also stating he reserved his right to call any treating physicians as witnesses. On the same date, defendant served a document that purported to be a designation of expert witnesses, but contained no such information, stating instead that defendant " 'hereby gives notice that he is not designating any retained experts for the first exchange of expert witness information,' " going on to state that he " 'expressly reserves the right to designate experts in rebuttal to [plaintiff's] designations.' " (*Id.* at p. 1022.) Several weeks later, defendant issued a second designation of expert witnesses, naming two witnesses designed to counter plaintiff's expert, also purporting to reserve the right " 'to

14

provide a supplemental designation of experts regarding all issues for which plaintiff designates an expert.' " (*Id.* at p. 1023.)  Over plaintiff's objection, the court allowed defendant's experts to testify (*id.* at pp. 1024–1025), and the jury returned a defense verdict.

The Court of Appeal reversed, beginning its opinion with the observation that the statute governing the exchange of expert information "required a 'simultaneous' exchange of information, in which each side must either identify any expert witnesses it expects to call at trial, or state that it does not intend to rely upon expert testimony. When it comes to issues that both sides anticipate will be disputed at trial, a party cannot merely 'reserve its right' to designate experts in the initial exchange, wait to see what experts are designated by the opposition, and then name its experts only as purported 'rebuttal' witnesses." (*Fairfax, supra,* 138 Cal.App.4th at p. 1021.)  "The effect of [defendant's] expert designation was to delay his own list of 'expected' witnesses until after he had seen the list put forth by [plaintiff]." (*Id.* at p. 1026.)  "[Plaintiff] designated only one retained expert, to address the only real disputed issue in this case . . . .  Because [defendant] had every reason to anticipate such a designation, he had a corresponding obligation to designate whatever expert he expected to have testify on the issue *at the same tim*e." (*Id.* at p. 1027.)  Defendant "had no right to simply delay his designation of retained experts until after he had the opportunity to view the designation timely served by [plaintiff]," and the trial court erred by refusing to strike his designation.  (*Ibid.*)

In sum, *Fairfax* held that what defendant did was improper because its effect "was to delay his own list of 'expected' witnesses until after he had seen the list put forth by [plaintiff].  [Defendant] does not deny that this was his express intent . . . ." (*Fairfax*, *supra*, 138 Cal.App.4th at p. 1026.)  And such "wait to see" approach would not be allowed.  *Fairfax*, and its limited holding, is not applicable here.  For several reasons.

15

First, unlike the defendant in *Fairfax*, Du-All complied with the statute in its initial disclosure, naming the two experts it "expect[ed]" to call.[4]

Second, there was prejudice in *Fairfax*, the improper expert testimony the court allowed that resulted in the defense verdict. Here, there was no prejudice found, indeed, even meaningfully attempted to be shown by plaintiffs, whose fundamental contention on the issue below is that there was "inherent prejudice." The fact is that at the time the supplemental disclosure was served, neither party had deposed any expert witnesses. Beyond that, before the trial court ruled on plaintiffs' motion to strike, the court had continued trial to October 29, with expert discovery to remain open until 30 days before trial.[5]

Third, and again unlike the defendant in *Fairfax*, whose wait to see approach was "his express intent" (*Fairfax, supra,* 138 Cal.App.4th at p. 1026), indicating what could be considered gamesmanship, we see no gamesmanship here. To the contrary, and as noted, there is no indication Du-All and its counsel were anything but professional, civil, and cooperative in all they did, necessitating not one motion to compel to be filed by plaintiffs. In sum, neither Du-All "nor [its] counsel engaged in actions that can be characterized as gamesmanship, nor did they engage in a 'comprehensive attempt to thwart the opposition from legitimate and necessary discovery,' justifying exclusion of evidence." (*Staub, supra*, 226 Cal.App.4th at p. 1447, quoting *Zellerino, supra*, 235 Cal.App.3d at p. 1117.)

---

[4] We have found only one published opinion that has applied *Fairfax: Osborne v. Todd Farm Service* (2016) 247 Cal.App.4th 43. There, the trial court dismissed with prejudice appellant's complaint for personal injuries during a jury trial as a sanction for her counsel's repeated violations of the trial court's orders excluding hearsay and opinion testimony. The appellate court easily affirmed, saying this as to the expert witness issue: "During discovery, appellant failed to make a timely designation of expert witnesses. Instead, after respondents served their designations of expert witnesses, appellant served a 'supplemental' designation naming hers. The trial court granted Berrington's motion to strike appellant's supplemental designation," an order appellant did "not challenge . . . on appeal." (*Id.* at p. 46.)

[5] In fact, the most recent information from the parties is that the trial date has been "vacated," and that depositions of experts still have not begun.

Attempting to make a case to the contrary, plaintiffs assert in their return that Du-All "Engaged in a Pattern of Unreasonable Conduct," a statement purportedly supported by the various items set forth in bullet-point fashion for three pages in the return. Passing over whether the items in fact demonstrate any "unreasonable conduct," the fact is that every single item on those pages deals with scheduling issues, all in or around May and June 2018. This is hardly a "pattern of misconduct." Not only that, most of these items were brought to the trial court's attention in the context of the motion to continue trial, to which plaintiffs stipulated.

On several occasions plaintiffs refer to the experience and expertise of Du-All's counsel, describing them as partners in the "nation's most respected firms. Mr. Scully, a named partner in the 800-attorney Gordon, Rees, Scully & Mansukhani firm, is one of the '25 foremost trial attorneys' in the U.S. [Citation.] [¶] Mr. Shanagher, a partner at Duane Morris, 'has handled jury trials, court trials, mediations and arbitrations for more than 30 years. [Citation.] Mr. Fields, also a partner, has lectured about 'Lessons Learned from First Chair Experience.' [Citation.]." And, plaintiffs' argument seemingly runs, even inexperienced attorneys would have known to do something these "world class attorneys" did not do—exercise "reasonable diligence." We fail to see the connection. If anything, based on the claimed experience of counsel, we would infer just the opposite, that they did just what their experience had taught them, not because of any claimed "gamesmanship." Why would experienced counsel gamble on such gamesmanship that, should it not succeed, would result in their defending a case without experts on issues they "had to know" would be involved, and thus risk a possible devastating effect on their client—not to mention a possible legal malpractice claim based on such gamesmanship?

Plaintiffs also assert that Du-All could have retained and identified various experts, apparently with little to no expense. We do not understand the assertion, as we would expect that before any expert would agree to be identified as such, he or she would have to review the material on which they would opine, with, of course, its concomitant expense.

17

Fourth, and perhaps most importantly, *Fairfax, supra,* 138 Cal.App.4th 1019 was essentially a one-issue case—whether defendant committed malpractice; this was "the only real disputed issue in the case." (*Id.* at p. 1027.) This necessarily meant that defendant had to know what the issue was, and thus what expert he "expect[ed]" to call. This is not so here, and plaintiffs have not demonstrated that Du-All always expected to retain experts in the various fields of expertise set forth in the plaintiffs' initial disclosure. Or, as the trial court put it, citing nothing, Du-All "had to have known" that plaintiffs were going to call certain experts.

Focusing solely on the issue of damages, plaintiffs assert that Du-All apparently had to "expect" to retain damages experts for three reasons: (1) Du-All had notice of Mark Krein's injuries since the date the complaint was filed; (2) Du-All had notice that Mark Krein's past special damages would be in the millions of dollars; and (3) plaintiffs' response to some written interrogatories—propounded, we note, by another defendant—made reference to experts. We are not impressed.

To begin with, the expert disclosure statute merely requires a party to designate an expert whose opinion the party "expects to offer in evidence at . . . trial." (§ 2034.210, subd. (a).) So, the mere fact that Du-All may have known, expected, or even anticipated that plaintiffs would designate damages experts does not, under the requirements set forth in the Code of Civil Procedure, place any responsibility on Du-All to anticipate what experts plaintiffs might designate and in anticipation of that designation designate rebuttal experts in its initial disclosure.

Arguing to the contrary, plaintiffs assert in the "Introduction" to their return that "Du-All also judicially admitted it cannot properly '*defend a paraplegic case with no experts* to rebut Plaintiffs' damages experts' (Reply 6 [emphasis added]; Pet. ¶ 11.)" Twelve pages later, in their "Overview" of their argument, plaintiffs assert that "Du-All's judicial admission that it cannot '*defend a paraplegic case with no experts*' (Reply 6 [emphasis added]) concedes Petitioner 'expect[ed]' to retain standard damages experts long before the initial disclosure date." And to top it off, plaintiffs conclude with this: "No wonder that Petitioner now judicially admits what it knew all along—that it cannot

18

properly '*defend a paraplegic case with no experts* to rebut Plaintiffs' damages experts.' (Reply 6 [emphasis added].)"  Plaintiffs are less than candid.

As Du-All aptly notes, the complete quote by Du-All in its context is as follows: "In other words, since Du-All participated in the initial expert exchange, it had the right to then 'choose experts to target plaintiffs' timely-disclosed experts.'  It is neither prejudicial nor inherently prejudicial for a party to comply with section 2034.280 and designate supplemental experts.  In sharp contrast, it is prejudicial that Du-All, which complied with the expert designation statutes, now has to defend a paraplegic case with no experts to rebut Plaintiffs' damages experts."

As to the interrogatory responses, they are, as noted, responses to interrogatories propounded by a different defendant.  Moreover, the responses were hardly all that plaintiffs crack them up to be, plaintiffs themselves saying only that "many" of their responses referred to possible expert testimony.  On top of all that, we do not understand how the issue of damages necessarily implicates experts that include a vocational rehabilitation consultant, a life care planner, or a physiatrist, a doctor who specializes in physical medicine.

Here, Du-All disclosed the experts it expected to call at trial.  Then, when plaintiffs disclosed five other experts, and, it must be emphasized, also produced a life care plan, Du-All retained and designated experts to rebut plaintiffs' position, including its own expert on a life care plan.  This is the precise reason why the Legislature codified the right to designate rebuttal experts.  The trial court's denial of this enumerated right by placing limitations not found in the Code of Civil Procedure was an abuse of discretion.

## DISPOSITION

A peremptory writ of mandate shall issue directing respondent superior court to vacate its order granting in part plaintiffs' motion to strike Du-All's supplemental disclosure of expert witnesses and to enter a new and different order denying the motion in its entirety.  The stay previously issued by this court shall be dissolved upon the issuance of the remittitur.  Du-All shall recover the costs incurred in this writ proceeding.

19

_____
Richman, J.

We concur:

_____
Kline, P. J.

_____
Miller, J.

*Du-All Safety v. Alameda County Superior Court* (A155119)

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Honorable Frank Roesch |
| Attorney for Petitioner Du-All Safety, LLC: | Gordon & Rees LLP, Miles D. Scully, Timothy K. Branson, Matthew Gregory Kleiner; |
| Attorney for Respondent Alameda County Superior Court: | No appearance; |
| Attorney for Real Parties in Interest Mark Krein and Lori Krein: | The Veen Firm, PC, Anthony L. Label, Steven Aaron Kronenberg; The Law Firm of Valerie McGinty, Valerie McGinty. |