[No. A113633. First Dist., Div. Two. Oct. 31, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
DEONTAE LAPOLEON JACOBS, Defendant and Appellant.

730

## COUNSEL

Robert K. Crowe, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Stan Helfman and Christopher J. Wei, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RICHMAN, J.**—A jury convicted defendant Deontae Lapoleon Jacobs of two counts of auto burglary and two counts of receiving stolen property. He was sentenced to five years four months in state prison, sentenced by a different judge than the one who presided over his trial—despite that the trial judge had set the sentencing on his calendar, in his department, and would be available in three court days to impose it.

Defendant's sole contention on appeal is that his sentence is improper, a contention distilled into two essential arguments: (1) defendant had a right to be sentenced by the trial judge, and (2) the sentencing judge abused his discretion in refusing to grant defendant a continuance of the sentencing hearing. We conclude that defendant's first argument has no merit, but that under the circumstances here his second argument does—that the refusal of the short continuance was not in conformity with the spirit of the law, and could be said to impede or defeat the ends of justice. We thus reverse and remand for sentencing by the trial judge.

## I. Background

On December 14, 2005, defendant was charged with two counts of felony auto burglary in violation of Penal Code section 459[1] (counts 1 and 3) and two counts of felony receiving stolen property in violation of section 496, subdivision (a) (counts 2 and 4). It was also alleged that defendant had prior felony convictions, including a prior strike within the meaning of sections 1170.12 and 667. The events resulting in defendant's arrest or his conviction are not relevant to the issues on appeal, and we need not detail them here.

On February 8, 2006, following a three-day trial over which the Honorable Philip A. Champlin presided, a jury found defendant guilty on all four counts. Immediately following the verdict, Judge Champlin heard evidence on the prior strike allegation, and found sufficient evidence to sustain the allegation. Judge Champlin then scheduled a sentencing hearing. Defense counsel requested that sentencing be put over until the week of March 1 to afford time for a possible *Romero* motion. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628].) Judge Champlin responded that he would not be available that week and suggested March 8 as an alternative. The prosecutor and defense counsel were amenable to that date, so Judge Champlin continued the matter to March 8 for sentencing, stating that the "matter will be set for transmission or for assignment in Department E to be assigned back to this department for sentencing." Defendant then waived time for sentencing.

On Wednesday, March 8, 2006, defendant and his counsel appeared for sentencing as scheduled. Instead of Judge Champlin, however, they found the Honorable Stephen T. Kroyer presiding. When Judge Kroyer inquired if defendant was ready to be sentenced, the following colloquy ensued:

"[Defense counsel]: Your Honor, I think this matter should go to Judge Champlin. There was a trial with Judge Champlin who was the trial judge.

---

[1] All subsequent statutory references are to the Penal Code.

"The Court: That would be nice but he's not here, so I'm proposing to do the sentencing myself.

"[Defense counsel]: Your Honor, may I inquire if Judge Champlin would be available within a reasonable period of time?

"The Court: He will be.[2] But I would like to go ahead and do it on the day it was scheduled.

"[Defense counsel]: I'm uncertain as to what the law is on the matter, but my impression was that the trial judge was at least a preferred judge to be the sentencing judge, and to the extent that my client has a right I would assert that right. And to the extent if it's a mere preference, I would ask the court to reconsider and give the defendant the benefit of being sentenced by the trial judge.

"The Court: Unless there is some authority saying that I shouldn't do it today, I'm going to do it today which is the day it's scheduled.

"[Prosecutor]: I think the fact, though, was the reasonable time since the court's already indicated that you think that we could have this matter back in front of the trial judge within a reasonable time. I mean if Judge Champlin were unavailable and [it] was not reasonably anticipated that we could get the case back in front of him, then clearly this court would have the power to sentence these defendants.[3] But if that's not the circumstance then I think the court's preference to do it on the day it was scheduled is outweighed by the fact that there is a very strong preference by the judicial system that the trial judge do the sentencing.

"The Court: Give me the authority for that. That's what I would like to see for the first time ever." Judge Kroyer then passed on the matter, affording counsel an opportunity to research the issue.

Following a break, the prosecutor submitted a brief citing several cases for the proposition that while it is normally the better procedure for the trial judge to decide matters of sentencing, it does not constitute error for a different judge to perform that function.

Over defense counsel's renewed objection, Judge Kroyer observed, "The law clearly contemplates another judge doing the sentencing from time to time for different reasons. Judge Champlin is not here this week. We have a

---

[2] Judge Kroyer subsequently specified that Judge Champlin was scheduled to be back the following Monday.

[3] Defendant was tried with his codefendant Raul Castro.

jail overcrowding issue which I always do my best to address whenever possible and this is one of those times. So I'll go ahead and do the sentencing now." The judge then sentenced defendant to five years four months in state prison, comprised of the two-year midterm on count 1, doubled to four years due to defendant's prior strike, and eight months, or one-third the midterm, on count 3, again doubled due to the strike, and to be served consecutively. Defendant also received four years on count 2 and 16 months on count 4, for an additional five years four months, which the court stayed pursuant to section 654.

This timely appeal followed.

## II.  Discussion

### A.  *Defendant Did Not Have a Right to Be Sentenced by the Trial Judge*

Defendant's first argument is that he had a right to be sentenced by the trial judge. Defendant is wrong.

██ Unlike a defendant who enters into a plea bargain with an implied term that the same judge who accepts the plea will impose the sentence (see *People v. Arbuckle* (1978) 22 Cal.3d 749, 756 [150 Cal.Rptr. 778, 587 P.2d 220]), a defendant who has been convicted after trial has no such right. (See *People v. Downer* (1962) 57 Cal.2d 800, 816 [22 Cal.Rptr. 347, 372 P.2d 107] (*Downer*), citing *People v. Cole* (1960) 177 Cal.App.2d 458, 460 [2 Cal.Rptr. 190], and *People v. Connolly* (1951) 103 Cal.App.2d 245, 248 [229 P.2d 112].) As the California Supreme Court tersely declared in *Downer*, "It is settled that it is not error for a judge other than the one who tried a criminal case to pronounce judgment and sentence." (*Downer, supra,* 57 Cal.2d at p. 816.) In accord are *People v. Mancha* (1963) 213 Cal.App.2d 590, 594 [29 Cal.Rptr. 72] and *People v. Valverde* (1963) 221 Cal.App.2d 616, 617–618 [34 Cal.Rptr. 577], both of which quote the above passage from *Downer*. In short, defendant had no right to be sentenced by Judge Champlin.[4]

The People cite the above cases in their respondent's brief. Defendant does not even mention these cases by name, much less discuss them, not even in

---

[4] We note that while these cases hold as they do, none of the cases has any analysis leading to its holding, save for the one sentence in *People v. Connolly, supra,* 103 Cal.App.2d 245, 248, that the "superior court in a particular county is a single entity and its division into departments is simply for the convenience and expedition of business." Moreover, none of the cases discusses the circumstances which led to a judge other than the trial judge imposing sentence, nor indicates when, if at all, the trial judge would be available. Nevertheless, the cases say what they say, and we, of course, are bound by *Downer*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

his reply, this despite the People's reliance on them. Rather, defendant places heavy reliance on section 1053, which provides in pertinent part as follows: "If after the commencement of the trial of a criminal action or proceeding in any court the judge or justice presiding at the trial shall die, become ill, or for any other reason be unable to proceed with the trial, any other judge or justice of the court in which the trial is proceeding may proceed with and finish the trial . . . ." According to defendant, section 1053 mandated that defendant be sentenced by Judge Champlin because the judge was not "unable to proceed" as contemplated by the statute. As defendant explains: "While the trial judge was not present on the day set for sentencing, he was to be available the next week and [defendant] had waived time for sentencing." Defendant's argument fails, however, because section 1053 does not apply to the setting here.

According to the unambiguous language of section 1053, that section governs judicial substitutions *during trial.* Nothing in the statute suggests that it governs posttrial situations such as sentencing, and defendant cites no authority in which section 1053 was the basis for a determination that a particular judge was obligated to decide a posttrial matter simply because that judge had presided over trial. In fact, many cases hold to the contrary, illustrated by *People v. Moreda* (2004) 118 Cal.App.4th 507, 517–518 [13 Cal.Rptr.3d 154], where we held that a different judge could decide a motion for a new trial. A similar holding is found in *People v. Espinoza* (1992) 3 Cal.4th 806 [12 Cal.Rptr.2d 682, 838 P.2d 204], which involved a motion to modify a death verdict.

Defendant's reliance on *People v. Truman* (1992) 6 Cal.App.4th 1816 [9 Cal.Rptr.2d 138] (*Truman*), which he asserts is "closely analogous on the facts," is similarly misplaced. According to defendant, in *Truman* "the Second District held that section 1053 authorizes substitution of a trial or sentencing judge only where the original judge is unavailable within a reasonable time." Nothing in *Truman* suggests that it in any way concerned the issue of sentencing, but rather a judicial substitution that occurred part way through voir dire.

Specifically, the defendant in *Truman* filed a peremptory challenge against the trial judge, who was then replaced by the supervising judge of the court. After ruling on a motion for bifurcation and presiding over two days of voir dire, the supervising judge transferred the matter to another judge for the completion of voir dire and the remainder of trial. On appeal, the defendant contended that the procedure violated his right to have his case tried by one

judge, because the supervising judge was not "unable to proceed" and substitution under section 1053 was therefore impermissible. (*Truman, supra,* 6 Cal.App.4th at pp. 1825–1826.) The Court of Appeal agreed with the defendant that it had not been demonstrated that the judge was "unable" to proceed, and concluded it was error to transfer the case to another judge. Because the defendant could not demonstrate he was prejudiced by the transfer, however, the error was found to be harmless. (*Id.* at pp. 1827–1828.)

*Truman* is clearly distinguishable. There, the substitution was made mid-trial and was clearly governed by the "unable to proceed" requirement of section 1053. Here, trial had been completed and defendant was at the sentencing stage, a situation beyond the scope of section 1053. Nothing in the language of *Truman, supra,* 6 Cal.App.4th 1816, suggests that the same result should obtain here.

> B.  *Judge Kroyer Abused His Discretion in Refusing to Continue the Sentencing Hearing for Three Days Until Judge Champlin Was Available*

██ Defendant's second argument is that his objection to being sentenced by a judge other than the trial judge constituted an oral motion for a continuance, and that Judge Kroyer's refusal to grant that continuance constituted an abuse of discretion requiring reversal.

As a procedural matter, the People contend that defendant failed to file a written motion for a continuance as required by section 1050, subdivision (b). While section 1050, subdivision (b) generally requires the moving party to file a written notice "at least two court days before the hearing sought to be continued," subdivision (c) allows for a motion that is not in compliance with the requirements of subdivision (b) upon a showing of good cause. Certainly, the fact that defendant had no advance knowledge that Judge Kroyer would be presiding in lieu of the expected Judge Champlin constitutes good cause justifying an oral motion in this instance, and we turn to the merits of defendant's argument.

██ "The determination of whether a continuance should be granted rests within the sound discretion of the trial court . . . ." (*People v. Sakarias* (2000) 22 Cal.4th 596, 646 [94 Cal.Rptr.2d 17, 995 P.2d 152].) Absent a showing of

abuse of discretion and prejudice to the defendant, the denial of a motion for continuance does not require reversal. (*People v. Samayoa* (1997) 15 Cal.4th 795, 840 [64 Cal.Rptr.2d 400, 938 P.2d 2].)

Various definitions and principles describing the abuse of discretion standard of review have been stated and repeated in numerous cases, such as in *Blank v. Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58], that we will set aside a trial court ruling only upon a showing of " ' "a clear case of abuse" ' " and " ' "a miscarriage of justice." ' " As to what is required to show such abuse, it has been said that a trial court abuses its discretion only when its ruling " ' "fall[s] 'outside the bounds of reason.' " ' [Citation.]" (*People v. Benavides* (2005) 35 Cal.4th 69, 88 [24 Cal.Rptr.3d 507, 105 P.3d 1099]; accord, *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193] [abuse of discretion requires a showing that the trial court " 'exceed[ed] the bounds of reason, all of the circumstances before it being considered' "].) More colorfully, it has been said that discretion is abused only when the trial court's ruling is arbitrary, whimsical, or capricious. (*People v. Linkenauger* (1995) 32 Cal.App.4th 1603, 1614 [38 Cal.Rptr.2d 868]; *People v. Branch* (2001) 91 Cal.App.4th 274, 282 [109 Cal.Rptr.2d 870]; see *People v. Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65] [" 'capricious disposition or whimsical thinking' "].) We would be hard pressed to apply those adjectives to Judge Kroyer here.

As noted, defendant's request for a continuance derived from his desire to be sentenced by the trial judge. But under *Downer, supra*, 57 Cal.2d 800, its predecessors, and its progeny, defendant had no right to his desire. And Judge Kroyer expressed, and apparently acted upon, a legitimate concern for proceeding with the sentencing as scheduled—to help alleviate jail overcrowding. Judge Kroyer was also informed. He had read and considered the probation report. Indeed, to ensure that he had the "full picture of all the facts," Judge Kroyer inquired of counsel whether there was anything in the probation report's statement of facts that was inconsistent with the evidence presented at trial, in response to which defense counsel identified a few discrepancies. Moreover, defendant's counsel informed Judge Kroyer that defendant is "21 years old. He's never been to prison before. This is a nonviolent crime, property crime. Apparently it was motivated because of his dependence on alcohol and drugs which isn't necessarily a badge but is often the underlying reason for these types of offenses." In sum, we cannot conclude that Judge Kroyer was arbitrary. Or whimsical. And he was certainly not capricious.

■ But there is other language which guides us here, illustrated by that in *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr.

704] (*Drew*), where the Third Appellate District rejected the contention that the sole test of abuse of discretion was whether the trial court's action was "whimsical, arbitrary, or capricious," stating as follows: "This pejorative boilerplate is misleading since it implies that in every case in which a trial court is reversed for an abuse of discretion its action was utterly irrational. Although irrationality is beyond the legal pale it does not mark the legal boundaries which fence in discretion."

Elaborating, the Court of Appeal further explained: "Very little of general significance can be said about discretion. ' "The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. [Citation.]" ' (*Westside Community for Independent Living, Inc.* v. *Obledo* (198[3]) 33 Cal.3d 348, 355 [188 Cal.Rptr. 873, 657 P.2d 365], citing to 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 244.) The scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion. [Citation.]" (*Drew, supra*, 207 Cal.App.3d at p. 1297.) Finally, as *Drew* noted, the "legal principles that govern the subject of discretionary action vary greatly with context. [Citation.] They are derived from the common law or statutes under which discretion is conferred." (*Id.* at p. 1298.)

Various other cases are to the same effect, including *Department of Parks & Recreation* v. *State Personnel Bd.* (1991) 233 Cal.App.3d 813, 831, fn. 3 [284 Cal.Rptr. 839] ("[a]lthough an act exceeding the bounds of reason manifestly constitutes an abuse of discretion, abuse is not limited to such an extreme case"); *County of Yolo* v. *Garcia* (1993) 20 Cal.App.4th 1771, 1778 [25 Cal.Rptr.2d 681] ("range of judicial discretion is determined by analogy to the rules contained in the general law and in the specific body or system of law in which the discretionary authority is granted"); see generally *Hurtado* v. *Statewide Home Loan Co.* (1985) 167 Cal.App.3d 1019, 1021–1026 [213 Cal.Rptr. 712], overruled on other grounds in *Shamblin* v. *Brattain* (1988) 44 Cal.3d 474, 479 [243 Cal.Rptr. 902, 749 P.2d 339].

In *Concord Communities* v. *City of Concord* (2001) 91 Cal.App.4th 1407, 1417 [111 Cal.Rptr.2d 511] our colleagues in Division Four of this court observed that "Abuse of discretion has at least two components: a factual component . . . and a legal component. [Citation.] This legal component of discretion was best explained long ago in *Bailey* v. *Taaffe* (1866) 29 Cal. 422, 424: 'The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by

fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . .' "

All this is well described in Witkin where, likewise citing the still vital *Bailey v. Taaffe, supra*, 29 Cal. 422, 424, the author distills the principle as follows: "Limits of Legal Discretion. [¶] The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. (See 5 Am.Jur.2d, Appellate Review § 695.) . . ." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 358, pp. 406–407.)

Applying these concepts here leads us to conclude that Judge Kroyer's refusal to continue the sentencing for two court days was an abuse of discretion.

■ While defendant had no *right* to be sentenced by Judge Champlin, it is well recognized that the strongly preferred procedure was for him to impose sentence. We recognized this very point long ago, in *People v. Cole, supra*, 177 Cal.App.2d at page 460, where we noted as follows: "In our judgment it is normally the better procedure for the judge who tried the case and is presumably familiar with the course of the trial and the demeanor of the witnesses to act on the matter of probation and sentence, but we agree with the holding of the court in *Connolly*[, *supra*, 103 Cal.App.2d 245] that there is no error in another judge of the court performing that function." Indeed, the prosecutor here recognized this strong preference, agreeing with defendant's counsel and advising Judge Kroyer that "I think the court's preference to do it on the day it was scheduled is outweighed by the fact that there is a very strong preference by the judicial system that the trial judge do the sentencing." We, too, agree, and hold that this preferred procedure should have been followed here.

The discussion in *People v. Strunk* (1995) 31 Cal.App.4th 265 [36 Cal.Rptr.2d 868] (*Strunk*) is particularly persuasive. One issue in *Strunk* involved review of a San Diego County branch court administrative practice which called for all sentencing to be handled by one judge, regardless of whether that judge had participated in any other aspect of the case. Remanding for a new sentencing hearing, the Court of Appeal disapproved of the practice: "Such blanket procedure, without an explicit agreement by the defendant or some showing of good cause, denies a defendant his or her right to an independent, full and fair sentencing hearing" as contemplated by the sentencing statute and the California Rules of Court. (*Strunk, supra*, 31

Cal.App.4th at p. 275.) And while no such blanket practice is involved here, various observations by the *Strunk* court are apt here, especially this: "Although this matter is readily distinguishable from *People* v. *Arbuckle*[, *supra*,] 22 Cal.3d 749 . . . because a plea agreement is not involved, its principles concerning 'internal administrative practices' not being able to override the implied natural course of proceedings that are expected by the defendant to that agreement, e.g., that the judge who takes the plea will also sentence the defendant, should likewise apply. Absent some agreement by the defendant or the unavailability of the trial judge for other than internal administrative problems or convenience of the court, or some other good cause shown, a defendant should be able to have the trial judge who was familiar with the evidence at the trial impose sentence. [Citation.]" (*Strunk, supra*, at pp. 275–276, fn. 13.)

*People v. Borousk* (1972) 24 Cal.App.3d 147 [100 Cal.Rptr. 867] (*Borousk*) is also instructive. Borousk was charged with five counts related to drugs; he pleaded guilty to one count (possession of marijuana), was found guilty on another count (possession of paraphernalia), and was acquitted on the remaining charges, though the jury could not reach a verdict on the count involving sale of cocaine. Following a declaration of mistrial on the cocaine charge, the presiding judge of the trial court, on his own motion, held a hearing to determine whether the charge should be dismissed pursuant to section 1385 in the furtherance of justice. The presiding judge received in evidence a memorandum from the trial judge, with his opinion that a retrial would probably not result in conviction; the presiding judge refused to accept an affidavit from the jury foreman with information as to the jury voting and containing the opinion of the foreman as to the probable verdict on retrial. The presiding judge subsequently ordered dismissal of the charge on various grounds, including that a retrial would in the opinion of the trial judge be a waste of time, and that a dismissal would be beneficial as relieving court congestion.

The People appealed. The Court of Appeal reversed, with its final discussion containing language applicable here. "Some of the complexities discussed herein would have been avoided had Judge Dodson [the presiding judge], after making his motion, transferred the hearing to the trial judge. The district attorney took the position at the hearing that this was required. This is not essential, but certainly it is desirable. The trial judge would have a 'feel' of the case . . . . The trial judge is in a better position to deal with the intangibles with which a case is so often impressed . . . ." (*Borousk, supra*, 24 Cal.App.3d at p. 162.)

The Court of Appeal then noted that it is " 'preferable' and 'the ends of justice are generally better served . . . for the member of the court who

presided at the trial to hear [and determine] a motion for a new trial' [citations]; and that it is 'normally the better procedure for the judge who tried the case . . . to act on the matter of probation and sentence.' (*People* v. *Cole*, [*supra*,] 177 Cal.App.2d [at p.] 460 . . . ; [citation].) It is recommended that if a section 1385 hearing before a judge other than the one who conducted the trial poses the likelihood of such difficulties as were here encountered, the matter be transferred to the trial judge if he is reasonably available." (*Borousk, supra*, 24 Cal.App.3d at p. 162.) Judge Champlin was reasonably available.

█ Here, the undisputed record reveals that Judge Champlin specifically set the matter so that it would be reassigned to his department for sentencing. That is what Judge Champlin expected. So did defendant, who asserted his claim to that expectation to Judge Kroyer at the first opportunity. And the prosecutor agreed. But it was all to no avail, trumped by a single fact—a "jail overcrowding issue." Whether jail overcrowding is an "administrative problem" or the "convenience of the court" within the literal language of *Strunk*, it is at least analogous. And by itself it should not be, and we hold cannot be, enough to overcome the recognized preferred procedure that defendant be sentenced by the trial judge—especially when the trial judge was available on the following Monday, necessitating a continuance of all of two days.

Defendant contends that he "could have received a more lenient sentence" if he had been sentenced to the lower term instead of the middle term on one or both of the auto burglary convictions or to concurrent sentences instead of consecutive ones, or if his prior strike had been stricken. He further submits that if he had been sentenced by Judge Champlin a "more lenient result [was] reasonably probable because of [his] relative youth, the two auto burglaries were committed within what was essentially a single criminal episode, and . . . this was essentially a property crime that did not result in injury to any person." While there is perhaps an element of speculation in this, it is, we conclude, sufficient to support the conclusion that a denial of a two-day continuance prejudiced defendant. Put another way, and as stated in *Borousk, supra*, 24 Cal.App.3d at page 163, "we are unable to say what the position" of Judge Champlin might have been.

### III.  Conclusion and Disposition

Our Supreme Court has held that "trial court discretion is not unlimited. 'The discretion of a trial judge . . . is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. [Citation.]' " (*Westside Community for Independent Living, Inc. v. Obledo, supra*, 33 Cal.3d at p. 355.) We hold that the decision by Judge Kroyer to proceed with the

sentence in the circumstances here was not "in conformity with the spirit of the law," and could be said to "defeat the ends of substantial justice." (*Bailey v. Taaffe, supra*, 29 Cal. 422, 424.) Such decision cannot stand, and the matter is remanded for sentencing by Judge Champlin.

Kline, P. J., and Lambden, J., concurred.