Filed 12/20/21  Willis v. Superior Court CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| MARIAN LATASHA WILLIS,<br><br>    Petitioner;<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>    Respondent;<br><br>WILLIAMS SPORTS RENTALS, INC.,<br><br>    Real Party in Interest. | A162776<br><br>(Alameda County<br>Super. Ct. No. RG17866531) |

Marian Latasha Willis filed a petition for a writ of mandate to compel the trial court to vacate its order granting Williams Sports Rentals, Inc.'s (WSR) motion to change venue from Alameda County to El Dorado County under Code of Civil Procedure[1] section 397, subdivision (c), a motion that required WSR to prove both "the convenience of witnesses and the ends of justice would be promoted by the change."  We issued an alternative writ of mandate directing the trial court to vacate its order and deny the motion, or to show cause why it should not be compelled to do so, advising the trial court

_____

[1] Further undesignated statutory references are to the Code of Civil Procedure.

1

it must give the parties notice and an opportunity to be heard if considering changing its order. The trial court set the matter for a further hearing, invited supplemental briefs, and following that hearing, issued an order reaffirming its order granting the motion.

After conducting a further review of the record and hearing oral argument, we are not satisfied the trial court properly exercised its discretion in light of all applicable legal principles in determining that the transfer of venue would promote "the ends of justice." We thus grant the petition and issue a peremptory writ of mandate.

## BACKGROUND

### The General Setting

On August 13, 2016, 22-year-old Raeshon Williams, an employee of Zip, Inc. and Berkeley Executives, traveled to South Lake Tahoe for a work trip with fellow employees Thomas Smith and Kai Petrich. That evening, as part of a team-building activity, Smith and Williams went riding together in Lake Tahoe on a wave runner, which had been rented from WSR. Smith was operating the wave runner, with Williams sitting behind him, and rode the wave runner at high speed into an oncoming wake, throwing Smith and Williams overboard and into the water. Williams drowned as a result of the impact.

As will be seen, Williams's mother, Marian Latasha Willis, filed a complaint in July 2017 in Alameda County Superior Court for wrongful death and survival damages.[2] However, the first formal pleading was that filed by

---

[2] As would later be revealed at the April 22, 2021 hearing on the subject motion to transfer venue, "Smith is nowhere to be found. And Petrick [*sic*] has left the country or he lives outside the country."

WSR in the federal district court, and we begin by discussion of that proceeding.

### The Federal Court Proceedings

In March 2017, after receiving a demand letter from Willis, WSR brought an admiralty action in federal district court under the Limitation of Liability Act (46 U.S.C. § 30505 et seq.) (Limitation Act), which limits a vessel owner's liability for any damages arising from a maritime accident to the value of the vessel and its freight, provided that the accident occurred without such owner's "privity or knowledge." (*Id.*, § 30505.) When WSR filed its complaint seeking exoneration from, or limitation of, liability with respect to any claims arising out of Williams's accident, the district court enjoined the prosecution of other suits against WSR in any other forum. (See Fed. Rules Civ. Proc., Supp. Rule F(3).) The district court also gave notice directing all potential claimants to file their claims in the admiralty court by a specified date. (See *id.*, Rule F(4).)

Willis filed an answer to the limitation complaint, a counterclaim for wrongful death damages, as well as a motion to lift the anti-suit injunction so that she could join WSR in the action she had filed pending in Alameda County Superior Court. The district court dismissed Willis's liability claim, denied the motion to lift the injunction, and granted WSR's motion for exoneration. (See *In re Williams Sports Rentals, Inc.* (E.D. Cal. Dec. 15, 2017, No. 2:17CV00653JAMEFB) 2017 WL 6451774.)

Willis appealed. In May 2019, the Ninth Circuit reversed the denial of the request to lift the injunction, holding that the district court abused its discretion in failing to consider whether WSR would be prejudiced if the injunction were lifted—a question necessary to determine if Willis fell within an exception to the admiralty court's exclusive jurisdiction over limitation

3

proceedings, in which case she would be allowed to try her wrongful death and survival action claims before a jury in state court. (*In re Williams Sports Rentals, Inc.* (9th Cir. 2019) 770 Fed.Appx. 391, 392, citing *Lewis v. Lewis & Clark Marine, Inc.* (2001) 531 U.S. 438, 449; *Newton v. Shipman* (9th Cir. 1983) 718 F.2d 959, 961.)

The parties returned to the district court in disagreement over the exact scope of the Ninth Circuit's decision. (*Williams Sports Rentals, Inc. v. Willis* (E.D. Cal. Oct. 1, 2019, No. 2:17CV00653JAMEFB) 2019 WL 4849230, at *1.) In October 2019, the district court issued an order stating it "stands by its ruling" on the anti-suit injunction, but invited "clarification from the Ninth Circuit." (*Id.*, at * 4.)

Willis again appealed. In November 2019, the Ninth Circuit reversed the order granting exoneration and judgment in favor of WSR, again on the grounds that the district court failed to conduct the prejudice inquiry, and directed the district court to dissolve the anti-suit injunction. (*In re Williams Sports Rentals, Inc.* (9th Cir. 2019) 786 Fed.Appx. 105, 105–106.) The Ninth Circuit also reversed the dismissal of Willis's liability claim, finding the allegations to support it were facially plausible. (*Id.* at p. 106.)

In July 2020, on remand, the district court finally dissolved the anti-suit injunction and stayed further proceedings until Willis's liability claim against WSR was adjudicated in state court. (*In re Williams Sports Rentals, Inc.* (E.D. Cal. July 28, 2020, No. 2:17CV00653JAMEFB) 2020 WL 4340153 at *1.)

### The Complaint and the Proceedings in this Case Leading up to the Motion to Transfer Venue

Meanwhile, in July 2017, Willis filed a complaint against Zip, Inc., Berkeley Executives, Smith, and Petrich in the superior court of Alameda County, the principal place of business of Zip, Inc. and Berkeley Executives

4

and the residence of Smith and Petrich. And Williams. Willis sought wrongful death and survival damages, alleging defendants' negligence caused her son's death.

Following the Ninth Circuit ruling, on February 7, 2020, Willis filed the first amended complaint (FAC), adding WSR as a defendant. And on June 29, the court continued the earlier-scheduled trial date to July 19, 2021.

WSR was served with the FAC in late August, and on August 25, appeared in this action by way of a section 170.6 peremptory challenge to Judge Jeffrey Brand, who accepted the challenge. Willis filed a motion for reconsideration, which Judge Brand denied on October 26.

On December 21, WSR filed a motion to transfer the case from Alameda County to El Dorado County on the grounds that (1) the case was not filed in the proper court, pursuant to section 396a, subdivision (b), and (2) "the convenience of witnesses and the ends of justice would be promoted by the change," pursuant to section 397, subdivision (c) (section 397(c)).

On January 7, 2021, WSR filed its answer to the FAC.

On March 4, the court denied the requests to transfer venue under both sections 396a, subdivision (b) and 397(c). As pertinent here, the court agreed with Willis that WSR's section 397(c) motion was premature because it was filed before WSR filed its answer. (*Cholakian & Associates v. Superior Court* (2015) 236 Cal.App.4th 361, 368 (*Cholakian*).)

**The Subject Motion to Transfer Venue**

On March 22, WSR filed a second motion to transfer venue under section 397(c), set for hearing on April 15, some three months before the scheduled trial date. It argued that "the convenience of witnesses would be promoted by the change" because the evidence is located, and "almost all of the nonparty material witnesses" reside or work, in or near El Dorado County. In support, WSR attached a declaration of its attorney, who

5

identified the names of 19 witnesses—including investigating law enforcement officers and the coroner who prepared Williams's autopsy report—and their proposed testimony, and asserted it would be more convenient for them to testify at trial in El Dorado County. That declaration attached the declarations of each of the 19 witnesses attesting the same.

In addition, WSR argued, "With the Alameda Superior Court backlogged with cases pending due to the COVID-19 pandemic, the interest [*sic*] of justice are also served in transferring the case to the South Lake Tahoe Branch of the El Dorado Superior Court where cases have been proceeding to trial including allowance for public seating."

On March 30, Willis opposed the motion, first arguing it should be denied because WSR failed to pay mandatory fees and costs when it filed the motion (§ 399, subd. (a).) Second, Willis argued that WSR had not shown that its witnesses would be inconvenienced if required to testify at trial in Alameda County; conversely, it was her witnesses, many of whom Bay Area residents, who would be inconvenienced by a trial in El Dorado County. Finally, Willis asserted that the ends of justice would not be promoted by a transfer because "it threatens further delay." According to Willis, the case "was supposed to start trial on January 6, 2020. If Willis was unable to join WSR in time for that trial date, it was only because [it] waged a three-and-a-half-year campaign to evade these proceedings altogether" by prosecuting its limitation complaint in federal court. And Willis concluded, "WSR's motion to transfer this case to El Dorado County is of a piece with that ill-conceived campaign and threatens Willis with still more delay and injustice." Willis maintained that WSR thus failed to meet its burden of proving both the convenience of witnesses and the ends of justice would be promoted by a transfer.

6

WSR filed its reply, attaching the declaration of Lilian Page, a court runner who stated she had presented blank checks to the superior court clerk as payment for the fees and costs associated with the motion to transfer venue. The clerk, however, "informed [her] that until the motion is granted, the court would not accept a transfer check."

On April 22, the court conducted a hearing on the motion, following which the court took the matter under submission. And by order of May 17, the court granted the motion. First, relying on Page's declaration, it found that WSR's alleged failure to pay the statutory fees and costs was not a basis for denial. Next, the court concluded, "Based on the evidence submitted, . . . for the majority of the material, nonparty witnesses in this case, trial in El Dorado County would be vastly more convenient than trial in Alameda County, and therefore the ends of justice would be satisfied by transferring this case to El Dorado County Superior Court." And finally turning to the issue of delay, the court observed, "[G]iven the continuing delays of trials in Alameda County caused by COVID related restrictions, staffing shortages stemming from budget cutbacks, and the need to give priority to statutory preference cases, it is extremely unlikely that trial in this case would actually begin in Alameda County on July 12, 2021."[3]

**The Petition for Writ of Mandate**

On June 4, Willis filed a petition for writ of mandate to compel the trial court to vacate its order granting the section 397(c) motion, with a request to stay proceedings. She argued the court abused its discretion in excusing WSR's failure to pay the statutory fees and costs, disregarding her opposing

---

[3] Although the order mentions a trial date of July 12, 2021, a June 29, 2020 case management order indicates trial had been continued to July 19, 2021.

evidence showing her witnesses would be inconvenienced by a transfer, and failing to consider WSR's delay in bringing the motion and the delay that a transfer to El Dorado County would cause.

On June 14, we temporarily stayed trial court proceedings pending disposition of the petition.[4] We permitted WSR to file an informal opposition to the petition, and Willis, a reply, both of which were filed. On August 10, after reviewing the record and the parties' briefs regarding the petition, we issued an order stating: "It appears respondent superior court erred by granting real party in interest Williams Sports Rentals, Inc.'s motion for change of venue to El Dorado County Superior Court under section 397, subdivision (c), where respondent court insufficiently accounted for delays that have already occurred in the case and the further delay that will result from changing venue to El Dorado County." Accordingly, we issued an alternative writ of mandate "commanding respondent Alameda County Superior Court . . . to set aside and vacate its order granting the motion for change of venue and, instead, to enter a new order denying the motion. In the alternative, respondent superior court may appear and show cause before Division Two of this court why a peremptory writ of mandate should not be granted."

---

[4] Willis requests that we take judicial notice of post-petition documents filed in both the trial court and this court, including this court's stay order; the alternative writ of mandate; the trial court's order setting an August 21 hearing and inviting supplemental briefs; the parties' supplemental briefs; the reporter's transcript on the August 21 hearing; the trial court's August 23 order reaffirming the order granting the motion; and an order by the El Dorado Superior Court indicating the case had been transferred to that court and assigned to a judge therein. We grant the request. (Evid. Code, §§ 452, 459.)

We further advised the trial court to "give the parties notice and an opportunity to be heard before issuing a new order in response to the alternative writ. (*Brown, Winfield & Canzoneri, Inc. v. Superior Court* (2010) 47 Cal.4th 1233, 1250, fn. 10 ['if a trial court is considering changing an interim order in response to an alternative writ, it must give the respective parties notice and an opportunity to be heard'].)" And we ordered that WSR file a return on August 31 and that Willis file a reply on September 7.

In response to the alternative writ, the trial court set a hearing on August 19 and invited supplemental briefing addressing: "(1) whether as matter of statutory interpretation, the phrase 'the ends of justice' in CCP 397(c) includes consideration of the possibility that a change in venue will result in a delay in the case, (2) whether the trial court considered that possibility in its discretionary decision, and (3) whether on the facts of this case a transfer to El Dorado County is likely to result in a delay of the case." Both parties submitted supplemental briefs.

The court held the hearing on August 19, and on August 23, prior to the filing of WSR's return to the petition and Willis's reply, the court issued a 15-page order reaffirming its order granting the motion to transfer venue.

In the order, the court first disclosed it had transferred the case to El Dorado County Superior Court on June 24, but explained the transfer was a clerical error. The court then discussed the statutory framework and pertinent case law addressing delay as a proper consideration in determining if "the ends of justice would be promoted by the change" in venue. Before analyzing "the two categories of delay"—delay that has already occurred and further delay that might occur from a transfer—the court found Willis was "judicially estopped from arguing WSR delayed in filing the second venue motion." In the court's view, Willis took two inconsistent positions: opposing

9

WSR's first venue motion on the grounds that it was "premature," but later, after prevailing on that motion, opposing WSR's second venue motion on the grounds that it was unduly delayed.

The court then turned to the merits, beginning with analysis of the first category of delay. It first found no evidence to support Willis's claim that WSR's federal action under the Limitation Act was frivolous or made solely to delay. Next, after conducting a comprehensive review of the procedural history of this case starting from WSR's appearance, wrote: "Looking at this chronology . . . [,] [t]he court finds that after WSR appeared in this case that WSR filed the first and then the second venue motion within a reasonable time."

As to the second category of delay, however, the court stated it "cannot readily determine what delay might result from changing venue," because it had "no comparative information" about the El Dorado and Alameda superior courts' courtroom availability, staffing, budget, and other considerations and "no information about when the case could proceed to trial in El Dorado County." But what it "can say" was that given the current congestion of Alameda County Superior Court, "[i]f the case remains in Alameda [County], then [the case would likely get] a trial date of September or October 2022."

WSR subsequently filed a return on August 31, responding to the court's August 23 order, which WSR argued justified the denial of peremptory relief. WSR added other assertions, including that Willis, not WSR, was responsible for the delays that have already occurred and that Willis failed to meet her evidentiary burden of proving further delay would result from a transfer.

On September 7, Willis filed a reply to the return, contesting the court's judicial estoppel ruling, reiterating that the court continued to insufficiently

10

account for WSR's prior delays stemming from the federal proceedings, and highlighting that WSR had the burden of proving, but failed to prove, that further delay would not result from a transfer.

## DISCUSSION

### The Standard of Review

Section 397(c) provides: "The court may, on motion, change the place of trial in the following cases: [¶] (c) When the convenience of witnesses and the ends of justice would be promoted by the change."

"A motion for a change of the place of trial on the ground that the convenience of witnesses and the ends of justice would be promoted by the change is committed to the sound discretion of the trial court and its determination will not be disturbed on appeal unless it clearly appears, as a matter of law, that there has been an abuse of such discretion." (*Rios v. Lacey Trucking Co.* (1954) 123 Cal.App.2d 865, 868; *People v. Brite* (1937) 9 Cal.2d 666, 690.) "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773; accord, *People v. Giminez* (1975) 14 Cal.3d 68, 72 ["The term judicial discretion 'implies absence of arbitrary determination, capricious disposition or whimsical thinking' "].)

As Willis notes, and we ourselves have described, there is more to abuse of discretion than arbitrary, whimsical, or capricious. As we put it, for example, in *People v. Jacobs* (2007) 156 Cal.App.4th 728, 736–738 (*Jacobs*):

"[T]here is other language which guides us here, illustrated by that in *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 (*Drew*), where the Third Appellate District rejected the contention that the sole test of abuse of discretion was whether the trial court's action was 'whimsical, arbitrary, or

11

capricious,' stating as follows: 'This pejorative boilerplate is misleading since it implies that in every case in which a trial court is reversed for an abuse of discretion its action was utterly irrational. Although irrationality is beyond the legal pale it does not mark the legal boundaries which fence in discretion.'

"Elaborating, the Court of Appeal further explained: 'Very little of general significance can be said about discretion. . . . [Citation.] The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion. [Citation.]' (*Drew*, *supra*, 207 Cal.App.3d at p. 1297.) Finally, as *Drew* noted, the 'legal principles that govern the subject of discretionary action vary greatly with context. [Citation.] They are derived from the common law or statutes under which discretion is conferred.' (*Id.* at p. 1298.) [¶] ... [¶]

"All this is well described in Witkin where, likewise citing the still vital *Bailey v. Taaffe* [(1866)] 29 Cal. 422, 424, the author distills the principle as follows: 'Limits of Legal Discretion. [¶] The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. (See 5 Am.Jur.2d, Appellate Review § 695.) . . .' (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 358, pp. 406–407."

**Guiding Legal Principles**

As noted, a party may move for a change of venue "[w]hen the convenience of witnesses and the ends of justice would be promoted by the change." (§ 397, subd. (c).) Section 397(c) "contains conjunctive conditions, both of which must occur before the moving party is entitled to change the

12

place of trial.  It is not only necessary that the convenience of witnesses be promoted but equally essential that the 'ends of justice' be promoted before the court is justified in granting the motion."  (*Willingham v. Pecora* (1941) 44 Cal.App.2d 289, 295 (*Willingham*) [analyzing former § 397, subd. (3)].)

At issue here is the second of the conjunctive conditions, "the ends of justice," a phrase undefined in section 397(c).  However, as the trial court found—and the parties acknowledge—case law illustrates that in determining whether the ends of justice would be promoted by a transfer, delay is a proper consideration.  *Willingham*, *supra*, 44 Cal.App.2d at p. 295 held that "[i]t is the universal rule in this state that motions [for change of venue] must be made within a reasonable time."  And as the trial court here explained, "reasonable time" can be construed as contemplating "two categories of delay"—delay in the filing of the motion and delay that might result from the transfer of venue.  (See *ibid.* [holding that "the trial court could have properly denied the motions upon the ground that the ends of justice would not have been promoted by a five-month delay in the trial of the action which would have resulted if the motions had been granted"].)

Importantly, "[t]he burden of proving both of [the conjunctive conditions in section 397(c)] is necessarily on the moving party." (*Willingham*, *supra*, 44 Cal.App.2d at p. 295; *Flanagan v. Flanagan* (1959) 175 Cal.App.2d 641, 644 (*Flanagan*); *Dillman v. Superior Court of Los Angeles County* (1962) 205 Cal.App.2d 769, 773 (*Dillman*).)  "This [the moving party] must do through affidavits which contain something more than generalities . . . .  The moving party must stand on the strength of [its] own showing rather than on any weakness of the opposition."  (*Corfee v. Southern California Edison Co.* (1962) 202 Cal.App.2d 473, 477 (*Corfee*).)

13

This is consistent with the principle that "[t]he plaintiff's choice of venue is presumptively correct" (*Easton v. Superior Court* (1970) 12 Cal.App.3d 243, 247), and, therefore, "[t]he moving part[y] ha[s] the burden of negativing plaintiff's choice of venue." (*Tutor-Saliba-Perini Joint Venture v. Superior Court* (1991) 233 Cal.App.3d 736, 744.)

**The Trial Court Abused Its Discretion in Granting the Motion to Transfer Venue**

In her petition, Willis argued the trial court erred in granting the motion to transfer venue because the court excused WSR's failure to pay fees and costs when it filed its motion as required by section 399, subdivision (a); disregarded her opposing evidence that showed her witnesses would be inconvenienced by a transfer; and failed to adequately consider both WSR's delay in bringing the motion and the delay that a transfer would cause in determining whether a transfer would promote "the ends of justice" (§ 397, subd. (c)).

In response to the alternative writ, the trial court revisited the last argument and rejected it in part. The court initially found Willis was "judicially estopped from arguing WSR delayed in filing the second venue motion," on the ground that she had successfully argued WSR's first venue motion was premature, but later took an inconsistent position by arguing WSR's second venue motion was unduly delayed.

Notwithstanding judicial estoppel, the court considered "the two categories of delay," delay in the filing of the motion and the delay that might result from the transfer of venue. As to the first category, the court determined that WSR filed its venue motion within a reasonable time, rejecting Willis's assertion that WSR's over three-years-long federal court litigation was made solely to delay and that WSR's conduct in this case was similarly dilatory.

14

As to the second category of delay, however, the court could not "determine what delay might result from changing venue to El Dorado Superior Court," citing a lack of information. The court nonetheless "reaffirm[ed]" its order granting the motion.

In reply, Willis contends both the court and WSR have failed to show why peremptory relief should not be granted. She argues the court misapplied the doctrine of judicial estoppel, continued to insufficiently account for the delays that have already occurred in this case , and excused WSR's failure to meet its burden of proof with respect to whether further delay would result upon a transfer.

We agree with Willis on the last point, that WSR did not meet its burden of proving there would not be further delay if the case were transferred to El Dorado. Although the trial court impliedly agreed with Willis as well, it nonetheless reaffirmed its order granting the motion to transfer venue. We conclude this decision was contrary to the applicable legal principles—and thus an abuse of discretion. (See *Jacobs*, *supra*, 15 Cal.App.5th at p. 738.)[5]

As noted, although the court attempted to analyze the potential of future delay upon a transfer, it found it "cannot determine what delay might result from changing venue to El Dorado." It explained it "cannot readily determine whether the case would get to trial more quickly in Alameda or in El Dorado" because it lacked "comparative information regarding Alameda and El Dorado on courtroom availability, caseloads, funding, staffing, backlogs, or other relevant issues" and "information about when the case could proceed to trial in El Dorado." What it "can state" is "that if the case

---

[5] A conclusion that renders it unnecessary to consider Willis's remaining claims of error.

15

remains in Alameda then it will not likely have a trial date until September or October 2022." Ultimately, the court never made a finding on whether there would be further delay if the case were transferred.

As the court explained, the potential delay that a transfer would cause is a proper factor to consider in deciding whether "the ends of justice would be promoted" by such a transfer. (Citing *Willingham*, *supra*, 44 Cal.App.2d at p. 295.) Competent evidence to establish or negate the potential of future delay upon a transfer may include, for example, declarations showing the comparative trial calendars of the transferor and transferee courts. (See, e.g., *Thompson v. Superior Court* (1972) 26 Cal.App.3d 300, 309–310 (*Thompson*) [parties submitted declarations confirming that the case would receive an earlier trial date in Los Angeles County than in Madera County]; *Carr v. Stern* (1911) 17 Cal.App. 397, 404, 408 [reversing denial of motion to change venue from San Francisco to San Mateo; moving party's affidavit showed San Francisco court's trial calendar was "crowded," whereas San Mateo court's was "not crowded," and the " 'case can easily be set for trial for some definite day and time not far distant' "].)[6]

---

[6] WSR's reliance on *Thompson* for the proposition that "consideration of the dockets should not be part of the analysis under section 397(c)" is misplaced. In *Thompson,* the court mentioned *Peiser v. Mettler* (1958) 50 Cal.2d 594, 612, which stated, " 'There is no merit to defendants' argument . . . that the court calendar in Kern County is less congested than that in Los Angeles County inasmuch as . . . th[is] reason[] [does not] fall[] within the statutory provision regarding change of venue for convenience of witnesses.' " The *Thompson* court, however, questioned whether *Peiser* had considered only the first of the conjunctive conditions of "the convenience of witnesses." (*Thompson*, *supra*, 26 Cal.App.3d at p. 309.) In any event, *Thompson* went on to consider the parties' declarations showing that an earlier trial could have been assigned in Los Angeles County, before concluding it was an abuse of discretion to grant the defendant's motion to change the venue from Los Angeles to Madera. (*Id.* at pp. 309–310.)

16

The parties do not dispute the court's finding it lacked information from which it could determine "what delay might result from changing venue to El Dorado County." But they disagree on, as Willis puts it, the party who should be "chargeable for that dearth."

WSR argues Willis bore the burden "to show with evidence that the delay would be prejudicial." Doing so, WSR cites *Willingham,* in which it was the opposing party who submitted an affidavit "show[ing] that a five month delay would result in the trial of the action if the trial court should transfer the same to Los Angeles County." (*Willingham*, *supra*, 44 Cal.App.2d at p. 295.) And, WSR argues, Willis cannot show the court abused its discretion because she failed to present evidence "that the actual trial date would be delayed[,] . . . she would suffer any prejudice," or she "would be put at the end" of the trial calendar in El Dorado County.

Willis counters that WSR, as the moving party, has the burden to prove the "conjunctive" elements in section 397(c). (*Willingham*, *supra*, 44 Cal.App.2d at p. 295; *Flanagan*, *supra*, 175 Cal.App.2d at p. 644.) Thus, Willis argues, to the extent "there is no competent information in the record 'about when the case could proceed to trial in El Dorado County,'" "that hole in the record belongs to WSR."

We agree with Willis. Under settled case law, WSR had the burden of proving with competent evidence that both the convenience of witnesses and the ends of justice would be promoted by a transfer. (*Willingham*, *supra*,

Furthermore, although WSR asserts court dockets should not be considered, WSR itself presented statistics concerning the respective caseloads and rate of disposing of cases within Alameda and El Dorado superior courts for the 2019-2020 fiscal year, evidence the court presumably rejected, as we later explain.

44 Cal.App.2d at p. 295; *Flanagan, supra*, 175 Cal.App.2d at pp. 643–644; *Dillman, supra*, 205 Cal.App.2d at p. 773.) WSR's reading of *Willingham* for the opposite conclusion is incorrect, as that case expressly held that "[t]he burden of proving both of [the section 397(c)] conditions is necessarily on the moving party." (*Willingham*, at p. 295.) That the opposing party in that case happened to present evidence that a transfer would cause prejudicial delay of the trial did not negate the moving party's burden to show otherwise. Indeed, as *Corfee, supra*, 202 Cal.App.2d at p. 477 explains, "[t]he moving party must stand on the strength of [its] own showing rather than on any weakness of the opposition." In sum, as Willis aptly notes, it was not her burden to show that the "transfer to El Dorado would likely result in a delay of the case; it was WSR's burden to offer competent affidavits showing that it would not."

Here, the court did not expressly state whether WSR met its burden on the motion. But we may presume that when it concluded it did not have sufficient information from which to determine whether a transfer would cause future delay, the court impliedly found the evidence submitted by WSR on this point was entitled to little to no weight. This is evident from the record.

For example, WSR presented statistical evidence from a Judicial Council report showing that in the 2019-2020 fiscal year, El Dorado Superior Court had fewer cases than Alameda Superior Court, and that the former disposed of its cases at a higher rate in a 12-month span than the latter. At the August 19 hearing, Willis objected to the statistics on the grounds it was argument, not evidence, was not properly presented in a declaration, and was hearsay. The court did not rule on these objections, but explained that "even with the information that is readily available and for which the court

18

theoretically could take judicial notice . . . it is simply not easy to make a determination about what kind of delay might ensue from one court to another. There's so many factors that are in play. It is not just the size of the court or the number of the cases, but budget and staffing is a huge component of that, and their capacity to be able to try cases . . . ." We may reasonably infer from the court's comments that it gave little weight to the statistics. And "[t]the weight to be given the [evidence was] for the trial court to determine." (*Corfee*, *supra*, 202 Cal.App.2d at p. 479.)

In addition, WSR submitted its attorney's declaration in support of supplemental briefing below, in which counsel testified that on August 17, 2021, he had spoken with an El Dorado Superior Court clerk, who informed him that the case had been assigned a case number and to a judge, and that the judge expected to have the first case management conference the week of August 23 for purposes of scheduling a trial. Willis objected to the declaration on numerous grounds, including that it was based on information obtained as a result of a transfer of the case made after, and thus in violation of, our stay order. We agree with Willis that the erroneous transfer "should not give [WSR] a leg up on the issue of whether or not additional delays won't occur because this case should not have gone to El Dorado County." In any event, based on the court's statement it had "no information about when the case could proceed to trial in El Dorado County" right before recounting the contents of counsel's declaration, we may infer it found the declaration had minimal probative value on the question of the delay that might result from the transfer.

In sum, by finding it "cannot determine what delay might result from changing venue to El Dorado Superior Court"—a consideration for the court in deciding if the change would promote "the ends of justice"—the trial court

impliedly rejected WSR's evidence purportedly showing the absence of delay from a transfer. This finding in turn implies the court found WSR did not meet its burden of proving the second of the conjunctive conditions in section 397(c). When the court nonetheless granted the motion, it failed to hold WSR to its burden, all the while acknowledging that the moving party indeed bore that burden. The court therefore did not analyze the section 397(c) motion in conformity with the " ' "legal principles governing the subject of its action." ' " (*Jacobs*, *supra*, 156 Cal.App.4th at p. 738.) Accordingly, it abused its discretion in granting the motion.[7]

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to (1) vacate its May 17, 2021 order granting the section 397(c) motion to transfer the case from Alameda County to El Dorado County, (2) enter a new order denying the motion, (3) and vacate its order transferring the case to El Dorado County Superior Court (*Badella v. Miller* (1955) 44 Cal.2d 81, 85–86; *Baker v. Fireman's Fund Ins. Co.* (1887) 73 Cal. 182, 183). The order

---

[7] As noted in footnote 5, given our conclusion, we need not consider Willis's challenges to the court's findings concerning the first category of delay, i.e., the delay that has already occurred in this case. These findings include the application of judicial estoppel—a ruling that we read as barring only Willis's argument that WSR delayed *before* filing the subject venue motion (the first category of delay), which is distinct from, and thus does not embrace, her additional argument there would be further delay *as a result of* the transfer (the second category of delay). Furthermore, our conclusion that WSR failed to satisfy its burden as to the second of the conjunctive conditions in section 397(c) renders it unnecessary to address the court's findings on the first condition of "the convenience of witnesses." (See *Willingham*, *supra*, 44 Cal.App.2d at p. 295.) Finally, since we are reversing on the merits, there also is no reason to consider Willis's procedural argument based on WSR's failure to pay statutory fees and costs.

20

staying the proceedings, issued on June 14, 2021, is vacated. Willis shall recover her costs on appeal.

In the interests of justice and to prevent further delays, this decision shall be final as to this court immediately. (Cal. Rules of Court, rule 8.490(b)(2)(A).)

_____
Richman, Acting P.J.

We concur:


_____
Stewart, J.


_____
Miller, J.

*Willis v. Superior Court* (A162776)