Filed 11/6/24  P. v. Tooker CA1/1
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>CHARLES TOOKER,<br><br>　　　　Defendant and Appellant. | A163332<br><br>(Marin County<br>Super. Ct. No. SC197709A) |

This is our fourth opinion involving defendant Charles Tooker, whose case has been affected by a series of ameliorative criminal laws that took effect after his sentencing.  In 2018, a jury convicted him of attempted murder, criminal threats, and other crimes after he brutally attacked and stabbed his ex-girlfriend, M.A.  The trial court sentenced him to 16 years in prison, and the following year, this court affirmed the judgment.  (*People v. Tooker* (Dec. 9, 2019, A154181) [nonpub. opn.].)

In doing so, we concluded that no remand was necessary for the trial court to consider whether Tooker was eligible for mental health diversion under newly enacted Penal Code section 1001.36.[1]  After granting his petition for review on this issue, the California Supreme Court remanded the case for reconsideration in light of *People v. Frahs* (2020) 9 Cal.5th 618, which held

_____

[1] All further statutory references are to the Penal Code.

that section 1001.36 applies retroactively to all defendants whose judgments were not yet final at the time the statute took effect.

We then issued a new opinion in which we conditionally reversed the judgment and remanded for the trial court to consider whether Tooker was eligible for relief under section 1001.36. (*People v. Tooker* (Oct. 13, 2020, A154181) [nonpub. opn.].)[2] On remand, the trial court denied relief on the basis that Tooker posed an unreasonable risk of danger to public safety if treated in the community under former section 1001.36, subdivision (b)(1)(F) (section 1001.36(b)(1)(F)).[3] Under that provision, the unreasonable risk is that the defendant will commit one of a list of violent felonies known as "super strikes." (§§ 1001.36(b)(1)(F), 1170.18, subd. (c); see *People v. Jefferson* (2016) 1 Cal.App.5th 235, 242; § 667, subd. (e)(2)(C)(iv).)

Tooker appealed from the order denying diversion, claiming the trial court abused its discretion by concluding he posed an unreasonable risk of danger and denying him a continuance to obtain further evidence. He also claimed he was entitled to a new sentencing hearing under two other new laws: Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill No. 567), which amended section 1170 to alter a trial court's discretion to choose the lower, middle, or upper term, and Assembly Bill No. 518 (2021–2022 Reg. Sess.) (Assembly Bill No. 518), which gives a trial court discretion to choose which term to impose for an act punishable in different ways under section 654.

---

[2] We grant Tooker's unopposed request for judicial notice of the record in his first appeal.

[3] Section 1001.36 has been amended since the trial court denied diversion to Tooker, but not in any way that materially affects our analysis. Throughout this opinion, we refer to the version of section 1001.36 in effect when the court ruled in 2021, not the current statute.

In 2022, we affirmed the order denying diversion, holding that the trial court did not err by denying diversion to Tooker and a remand for resentencing under Senate Bill No. 567 and Assembly Bill No. 518 was unnecessary. (*People v. Tooker* (Jul. 11, 2022, A163332) [nonpub. opn.].) As to the claim under Senate Bill No. 567, we determined that four of the six aggravating factors on which the court relied to impose upper terms for Tooker's felony convictions were not stipulated to or found true beyond a reasonable doubt, as section 1170 now requires. (§ 1170, subd. (b)(2).) Nonetheless, we concluded that no remand for resentencing was required because the record showed the court would have exercised its discretion to impose the upper terms even if it knew it could rely on only the other two aggravating factors.

In September 2022, the California Supreme Court granted Tooker's subsequent petition for review and deferred further action pending its decision in *People v. Lynch*, S274942. The Court filed *Lynch* in August 2024, holding that a remand for resentencing under Senate Bill No. 567 is necessary when the trial court relied on aggravating facts that were not proven as required "unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the [trial] court relied to conclude the upper term was justified." (*People v. Lynch* (2024) 16 Cal.5th 730, 743 (*Lynch*).)

On October 2, 2024, the Supreme Court remanded Tooker's case to us with directions to vacate our July 2022 decision and reconsider the matter in light of *Lynch*. In supplemental briefing, the parties agree that a remand for resentencing is required under *Lynch* because—as we already determined in our July 2022 decision—we cannot conclude beyond a reasonable doubt that a

3

jury would have found true beyond a reasonable doubt all of the aggravating factors on which the trial court relied to impose the upper terms in this case.

Accordingly, we vacate our decision of July 11, 2022, reverse the sentence, and remand for the trial court to reconsider which terms to impose under the current version of section 1170. Because a full resentencing is required, Tooker may also pursue his claim under Assembly Bill No. 518 below. The Supreme Court's order does not affect our holding that the trial court did not err by denying him mental health diversion, however, and we reach the same conclusion as to that claim.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

#### A. The Proceedings Leading to Tooker's First Appeal

The facts underlying Tooker's convictions are recited in our October 2020 opinion. To summarize, Tooker committed several acts of domestic violence against M.A. while they were dating. After the relationship ended in 2013, Tooker began stalking her, and she obtained a restraining order against him. Around the same time the relationship ended, Tooker sustained a traumatic brain injury.

In June 2016, Tooker went to M.A.'s house with a gun, in violation of the restraining order. He entered her backyard, where she was gardening, displayed the gun, and told her he was going to kill her. M.A., who was holding pruning shears, attempted to escape over the yard's back gate. Tooker pulled her down, slammed her head into the ground, and, after a struggle, stabbed her with the pruning shears eight times in the back of her neck and head. He then began strangling her with his hands.

Bystanders heard M.A. screaming for help, and two men entered her yard and were able to subdue Tooker. Tooker's gun was located by the fence.

4

M.A. was hospitalized for her injuries, which included stab wounds, bruising, and a head cut that required stitches. Tooker was arrested and taken to jail. Evidence was presented that he later arranged to pay another inmate to threaten and possibly kill M.A. to prevent her from testifying at trial.

Tooker, who testified in his own defense, said he experienced serious problems after his brain injury and became homeless. He stopped at M.A.'s house for "closure," supposedly on his way to ride his bicycle to Oregon, and he claimed that he could not remember most of what happened during the attack. He also denied conspiring with the other inmate to prevent M.A. from testifying.

A psychiatrist testified for the defense that medical records showed Tooker "suffered a skull fracture and a large subdural hematoma, traumatic brain injury" after being assaulted in 2013. The records also showed that even after undergoing surgery and rehabilitation therapy, Tooker experienced ongoing issues typical of those with a traumatic brain injury, including personality changes, memory deficits, and problems with impulse control and judgment.

The jury convicted Tooker of felony counts of attempted murder, criminal threats, assault with a deadly weapon (pruning shears), assault by means likely to cause great bodily injury (GBI) (strangulation), and corporal injury on a former dating partner, and a misdemeanor count of violation of a domestic relations court order.[4] It also found true, as to the convictions for attempted murder, strangulation-based assault, and corporal injury, the

---

[4] The convictions were under sections 187, subdivision (a), and 664 (attempted murder), 422 (criminal threats), 245, subdivision (a)(1) (assault with deadly weapon) and (4) (assault by means likely to cause GBI), 273.5, subdivision (a) (corporal injury on dating partner), and 273.6, subdivision (a) (violation of court order).

allegation that Tooker personally inflicted GBI under circumstances involving domestic violence, and, as to the criminal-threats offense, the allegation that he personally used a firearm.[5] The jury was unable to find true the allegations that Tooker personally used a firearm during the attempted murder and the corporal-injury offense or that he personally inflicted GBI under circumstances involving domestic violence during the assault with the pruning shears. Finally, it found not true the allegation that the attempted murder was deliberate and premeditated.[6]

In April 2018, the trial court sentenced Tooker to 16 years in prison, composed of the aggravated term of nine years for attempted murder and consecutive terms of five years for the GBI enhancement to attempted murder, eight months for criminal threats, and 16 months for the firearm enhancement to criminal threats. Four-year aggravated terms for both assault convictions and the corporal-injury conviction were imposed and stayed. Tooker was also sentenced to a consecutive term of one year in county jail for the misdemeanor.

B.      *The Proceedings Leading to This Appeal*

After we conditionally reversed the judgment and remanded the matter in 2020, the trial court appointed counsel to represent Tooker for proceedings under section 1001.36. Tooker then filed a request for a hearing, arguing he

---

[5] The GBI allegations were found true under section 12022.7, subdivision (e)(1), and the personal-use allegation was found true under section 12022.5, subdivision (a).

[6] The unresolved and rejected allegations were made under section 12022.7, subdivision (e)(1) (GBI), sections 12022.5, subdivision (a), and 12022.53, subdivision (b) (personal use of firearm), and section 664, subdivision (a) (premeditation). The enhancements on which the jury hung were dismissed on the prosecution's motion.

had made a prima facie showing of eligibility for diversion. As relevant here, he claimed he did not pose an unreasonable risk of danger to public safety because he had never been charged with or convicted of a super strike. The prosecution opposed the request, arguing "[t]here [was] every indication based on [Tooker's] prior criminal history, conduct that resulted in the attempted murder conviction in this case, and . . . attempts to arrange for [M.A.'s] murder from custody . . . that [he] would commit at least one . . . 'super strike.'" The prosecution also argued that "regardless of whether the minimum requirements [for diversion] have been met," the court could proceed to the second stage of the analysis and find that Tooker was not suitable for diversion.

In July 2021, the trial court held a hearing on Tooker's application for diversion, focused on whether Tooker had made a prima facie showing of eligibility for relief. After the parties argued, the court scheduled another hearing for the following month to permit it to consider the matter further.

At the outset of the second hearing, the trial court offered Tooker's counsel the opportunity to present any further evidence counsel wished to be considered. Counsel responded that he wanted the opportunity to present newly obtained prison medical records and to obtain expert testimony, particularly on the topic of treatment. The prosecutor objected to a continuance, arguing the additional evidence was of limited relevance to showing Tooker did not pose an unreasonable risk of danger. After further discussion, the court denied the continuance, finding that Tooker's offer of proof would not impact its ruling.

The trial court then "summarily denied" Tooker's request for mental health diversion. The court explained its view that Tooker was required to make a prima facie showing not only that he met all six requirements for

7

eligibility for diversion but also that he was suitable for diversion. The court stated it was "not satisfied, even at . . . this prima facie stage, . . . that [Tooker] will not pose an unreasonable risk of danger to public safety . . . if treated in the community" under section 1001.36(b)(1)(F). The court described Tooker's "extensive history of violence," from violent incidents with strangers, to previous assaults on M.A., to the incident at issue. The court pointed out that not only had Tooker been convicted of a super strike—attempted murder—there was also "compelling evidence at the trial that [he] may have committed another super strike, and that was solicitation to commit murder."

The trial court also denied relief on the basis that Tooker and his offenses were not suitable for diversion, explaining, "[G]iven [his] history of domestic violence in the context of this very serious case where . . . [M.A.] would have been murdered had she not been saved by good Samaritans . . . , I'm finding that this type of pattern of domestic violence, lack of commitment or adherence to a [c]ourt order, clear obsession, anger, and jealousy, [establish] that [neither he] . . . nor these offenses, as a matter of discretion, are . . . suitable for mental health diversion."

## II.
### DISCUSSION

A. *The Trial Court Did Not Abuse Its Discretion in Denying Tooker's Request for Mental Health Diversion or His Request for a Continuance.*

Tooker claims the trial court abused its discretion by denying mental health diversion because he posed an unreasonable risk of committing a super strike. He also claims the court abused its discretion by denying him a continuance to present more evidence. We are not persuaded on either count.

8

### 1. General legal standards

Shortly after Tooker was sentenced, the Legislature enacted Assembly Bill No. 1810 (2017–2018 Reg. Sess.), which created a pretrial mental health diversion program by adding section 1001.36 to the Penal Code. (Stats. 2018, ch. 34, § 24.) Under the statute, "[p]retrial diversion may be granted" if a defendant has a covered mental disorder and meets several other criteria, including not posing an unreasonable risk of danger to public safety. (§ 1001.36, subd. (b)(1).) If a defendant performs "satisfactorily" on diversion, the charges are dismissed, and "the arrest upon which the diversion was based shall be deemed never to have occurred." (§ 1001.36, subd. (e).)

Subsequently, Senate Bill No. 215 (2017–2018 Reg. Sess.) amended section 1001.36 to provide that defendants charged with certain offenses, including murder, are ineligible for diversion. (Stats. 2018, ch. 1005, § 1; § 1001.36, subd. (b)(2).) Senate Bill No. 215 also added the following provision: "At any stage of the proceedings, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion. The hearing on the prima facie showing shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel. If a prima facie showing is not made, the court may summarily deny the request for diversion or grant any other relief as may be deemed appropriate." (§ 1001.36, subd. (b)(3); Stats. 2018, ch. 1005, § 1.)

Thus, under the version of section 1001.36 in effect at the time of the challenged ruling, a trial court evaluating whether to grant diversion engaged in a two-step analysis. First, the court determined whether the defendant met the six statutory criteria and was therefore eligible for

9

diversion.  (§ 1001.36, subds. (b)(1), (3); *People v. Oneal* (2021) 64 Cal.App.5th 581, 588.)  We will refer to this as an eligibility determination.  Second, if the defendant met all the statutory criteria, the court decided whether to exercise its discretion to grant diversion.  (*Oneal*, at p. 588; *People v. Moine* (2021) 62 Cal.App.5th 440, 448 (*Moine*); see § 1001.36, subds. (a), (b)(1) [court "may" grant diversion if statutory criteria met].)  We will refer to this as a suitability determination.

An eligibility determination premised on a defendant's unreasonable risk of danger to public safety is reviewed for an abuse of discretion.  (*Moine*, *supra*, 62 Cal.App.5th at pp. 448–449.)  We apply the same standard of review to a suitability determination.  (See *People v. Oneal*, *supra*, 64 Cal.App.5th at p. 588; *Moine*, at p. 448.)  "A court abuses its discretion when its decision exceeds the bounds of reason or is so irrational or arbitrary that no reasonable person could agree with it."  (*Oneal*, at p. 588.)  This standard is met if the decision is based "on express or implied factual findings that are not supported by substantial evidence."  (*Moine*, at p. 449.)

> 2.    The trial court did not abuse its discretion by finding that Tooker posed an unreasonable risk of danger.

Tooker claims the record does not support the trial court's conclusion that he posed an unreasonable risk of danger to public safety, "[g]iven [his] lack of a prior history of violent felony convictions, the unique circumstances of the charged offenses[,] and [his] mental state at the time of the crimes."  We are not persuaded.

To begin with, we could affirm the denial of mental health diversion based solely on the trial court's suitability determination, which Tooker does not challenge.  As discussed above, under the relevant version of section 1001.36, even if a defendant met the six statutory criteria for eligibility, a trial court could still exercise its discretion to deny diversion.

10

And under the plain language of the statute, a court could summarily deny diversion if the defendant failed "to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion *and* that the defendant and the offense are suitable for diversion." (§ 1001.36, subd. (b)(3), italics added; *People v. Bunas* (2022) 79 Cal.App.5th 840, 859–860.)

Here, the trial court unambiguously denied diversion not only because Tooker failed to make a prima facie showing that he did not pose an unreasonable risk of danger but also because, "as a matter of discretion," it concluded he and his offenses were not "suitable for mental health diversion." Thus, even if the eligibility determination were erroneous, the unchallenged suitability determination independently requires us to affirm the court's order. Tooker offers no argument otherwise. Nevertheless, since the Attorney General did not plainly argue in his briefing that the court's suitability determination is an independent basis for affirming, we address the merits of Tooker's challenge to the court's eligibility determination.

The criterion at issue requires the trial court to be "satisfied that the defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36(b)(1)(F).) Section 1170.18 defines "unreasonable risk of danger to public safety" as "an unreasonable risk that [a person] will commit a new violent felony within the meaning of [section 667, subdivision (e)(2)(C)(iv)]." (§ 1170.18, subd. (c).) Such "super strikes" include "[a]ny homicide offense, including any attempted homicide offense," and "[s]olicitation to commit murder." (§ 667, subd. (e)(2)(C)(iv)(IV)–(V).) In deciding whether a defendant poses an unreasonable risk of danger to public safety, a court "may consider the opinions of the district attorney, the defense, or a qualified mental health

11

expert, and may consider the defendant's violence and criminal history, the current charged offense, and any other factors the court deems appropriate." (§ 1001.36(b)(1)(F).)

Tooker relies on two opinions holding that a trial court abused its discretion in concluding a defendant who sought diversion posed an unreasonable risk of danger under section 1001.36(b)(1)(F).  (*People v. Williams* (2021) 63 Cal.App.5th 990, 993 (*Williams*); *Moine, supra*, 62 Cal.App.5th at pp. 444, 446.)  In *Moine*, the Second District Court of Appeal construed this provision to mean that "a trial court necessarily must find the defendant is 'likely to commit a super-strike offense' " to deny diversion on this ground.  (*Moine*, at p. 450.)  In other words, "the risk of danger is narrowly confined to the likelihood the defendant will commit a limited subset of violent felonies." (*Ibid.*)  In *Williams*, Division Two of this court agreed this is the correct standard for determinations under section 1001.36(b)(1)(F).  (*Williams*, at p. 1001.)

*Moine* held that in light of this "high standard . . . , the record [before it did] not support the trial court's implied finding that [the defendant] was likely to commit a super-strike offense if he received mental health treatment in the community." (*Moine, supra*, 62 Cal.App.5th at p. 451.)  The charges at issue, assault and criminal threats, were not super strikes even though they "involv[ed] allegations of violence and threats of violence," and the defendant's criminal record did not include any violent felonies.  (*Id.* at pp. 444, 450.)  In addition, "two psychiatrists determined that [the defendant] posed a low risk for future assault." (*Id.* at p. 451.)  Finally, the trial court had also released the defendant "on bond for a period of over two years," which required the finding that he "was not likely to cause 'great bodily harm to others' if released." (*Ibid.*)

12

In turn, *Williams* concluded that "*Moine* compel[led] reversal" on the record before it. (*Williams*, *supra*, 63 Cal.App.5th at p. 1003.) In *Williams*, there was "ample evidence" that the defendant, who was charged with felony stalking and misdemeanor criminal threats, had "terrorized a family," and his "threats were violent, hateful[,] and specific." (*Id.* at pp. 994, 1003.) Nonetheless, similar to the circumstances in *Moine*, the charges were not super strikes, the defendant "pose[d] a low risk to public safety in the uncontroverted opinion of two mental health professionals, there [was] no evidence he owned, possessed[,] or had access to any weapons [citation], and he, too, was released on bond for more than two years without incident." (*Williams*, at p. 1003.) Indeed, "the record of [the defendant's] potential dangerousness [was] even weaker" than that in *Moine*, since the *Williams* defendant had no prior criminal record "and, for all of his horrific threats, he never actually assaulted anyone or engaged in any violence." (*Williams*, at p. 1003.)

Although acknowledging that "the facts of the present case certainly are not identical to those in *Moine* and *Williams*," Tooker argues that those decisions are "instructive on the exercise of discretion to deny mental health diversion on public safety grounds." Assuming, without deciding, that the applicable standard is whether a defendant is "likely to commit a super-strike offense," we conclude the trial court did not abuse its discretion by determining that Tooker posed an unreasonable risk of danger. Unlike the *Moine* and *Williams* defendants, Tooker had a prior history of violent behavior, was charged with (and convicted of) a super strike, during which he used one deadly weapon to seriously injure the victim and threatened to use another, and went on to commit another possible super strike, soliciting M.A.'s murder while in jail. Thus, although he attempts to minimize his

13

criminal history and the incident at issue, which he characterizes as "essentially a crime of passion," there was plenty of evidence to support the court's conclusion that he posed an unreasonable risk of danger to public safety if released.

We recognize that *Moine* and *Williams* did not involve a trial court's summary ruling, and those opinions therefore did not consider what prima facie showing a defendant must make to satisfy section 1001.36(b)(1)(F). Traditionally, in evaluating whether a party has made a prima facie case for relief, a court assumes the party's factual allegations are true. (See, e.g., *People v. Lewis* (2021) 11 Cal.5th 952, 971 [former section 1170.95 relief]; *People v. Duvall* (1995) 9 Cal.4th 464, 474–475 [habeas relief].) Thus, to avoid summary denial of diversion, Tooker arguably had to make a lesser showing than did the defendants in *Moine* and *Williams*. But Tooker does not address how this aspect of the case's procedural posture affects our review, and we are satisfied it does not make a material difference under the circumstances. It was undisputed that Tooker committed a super strike and had a history of violent behavior, and unlike in *Moines* and *Williams*, there was no affirmative indication that he had a low risk of reoffending. Nor did he claim that treatment in the community might reduce the risk he otherwise posed. In short, based on this record, the trial court did not abuse its discretion by summarily denying diversion on the basis that Tooker posed an unreasonable risk of danger to public safety if released.

        3.     The denial of a continuance was harmless.

Tooker also claims the trial court abused its discretion by denying his request for a continuance to present additional evidence relevant to his request for diversion. We reject this claim.

14

"To continue any hearing in a criminal proceeding," a party must show good cause for the continuance. (§ 1050, subds. (b), (e).) Whether to grant a continuance " 'rests within the sound discretion of the trial court,' " and we do not reverse the denial of a continuance "[a]bsent a showing of abuse of discretion and prejudice to the defendant." (*People v. Jacobs* (2007) 156 Cal.App.4th 728, 735–736.) Specifically, to prevail on appeal, a defendant must demonstrate a reasonable probability of a more favorable outcome had the continuance been granted. (*People v. Hawkins* (1995) 10 Cal.4th 920, 945.)

Tooker argues that the evidence he sought additional time to present "would have been pertinent to several of the elements the defense had to establish in order to show eligibility and suitability for diversion," particularly "the existence of current mental health conditions as well as their amenability to treatment." He disputes the trial court's conclusion that this evidence was not relevant to whether he posed an unreasonable risk of danger to public safety. He reasons that since section 1001.36(b)(1)(F) requires a court to consider whether such a risk would exist *if the defendant was treated in the community*, expert testimony about the potential effect of treatment "certainly would have informed the court's determination."

We need not decide whether the trial court erred in denying a continuance because Tooker fails to show that any error was prejudicial. As discussed above, the court denied diversion not only on the basis that Tooker posed an unreasonable risk of danger to public safety but also that he and the offenses were unsuitable for diversion. Tooker does not explain how the additional evidence he sought to present would have affected the court's suitability determination, except to say that evidence relevant to eligibility would have also borne on suitability. But the court's suitability

15

determination focused on the seriousness of Tooker's crimes, and we conclude there is no reasonable probability that additional evidence would have affected that determination. Therefore, the claim fails.

### B. *A Remand for Resentencing Is Required Under* Lynch.

Tooker also contends that a new sentencing hearing is required under Senate Bill No. 567, which amended section 1170 in various ways affecting a trial court's discretion to select among three possible terms of imprisonment. We agree with him and the Attorney General that a remand for resentencing is required under *Lynch* because the jury did not find true beyond a reasonable doubt all of the aggravating factors the trial court relied on to impose upper terms.

#### 1. Additional facts

Tooker was sentenced to the upper term on all five felony convictions.[7] At the time of the April 2018 sentencing, former section 1170, subdivision (b), provided that when a defendant was sentenced to prison for a crime with a sentencing triad, "the choice of the appropriate term shall rest within the sound discretion of the [trial] court." Former California Rules of Court, rule 4.420(b), provided that in exercising this discretion, a trial court could "consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision."[8]

Here, the trial court relied on six aggravating factors under rule 4.421(a) to impose the upper term for the felony offenses. These were that the crimes "involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or

---

[7] Only the term imposed for attempted murder affected the total sentence: By operation of law Tooker received one-third the midterm for criminal threats, and the terms for the other three felonies were stayed.

[8] All further rule references are to the California Rules of Court.

16

callousness" under rule 4.421(a)(1); Tooker "was armed with or used a weapon" under rule 4.421(a)(2); M.A. was "particularly vulnerable" under rule 4.421(a)(3); Tooker "threatened witnesses, unlawfully prevented or dissuaded witnesses from testifying, suborned perjury, or in any other way illegally interfered with the judicial process" under rule 4.421(a)(6); the way in which the crimes were committed "indicate[d] planning, sophistication, or professionalism" under rule 4.421(a)(8); and Tooker "engaged in violent conduct that indicates a serious danger to society" under rule 4.421(b)(1). The court also found no mitigating factors, thereby rejecting the probation department's position that Tooker "was suffering from a mental or physical condition that significantly reduced culpability for the crime[s]" under rule 4.423(b)(2).

> 2. Senate Bill No. 567

Effective January 1, 2022, Senate Bill No. 567 amended section 1170 to provide that a trial court "shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (§ 1170, subd. (b)(1); Stats. 2021, ch. 731, § 1.3.) In turn, subdivision (b)(2) of the statute provides that "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial."[9] (§ 1170, subd. (b)(2).) Thus, Senate

---

[9] Likewise, rule 4.420(b) has been amended to provide that the trial court "may only choose an upper term when (1) there are circumstances in aggravation of the crime that justify the imposition of an upper term, and (2) the facts underlying those circumstances have been (i) stipulated to by the

17

Bill No. 567 "ma[kes] the middle term of imprisonment the presumptive sentence" unless aggravating factors admitted or proved beyond a reasonable doubt justify the upper term. (*People v. Achane* (2023) 92 Cal.App.5th 1037, 1041.) There is no dispute that Senate Bill No. 567 is ameliorative legislation that applies retroactively to judgments, like Tooker's, that were not final at the time it took effect. (*In re Estrada* (1965) 63 Cal.2d 740, 745; *People v. Jones* (2022) 79 Cal.App.5th 37, 44; see *Lynch, supra*, 16 Cal.5th at p. 749.)

   3. Analysis

Before *Lynch* was decided, the Courts of Appeal were split on the "type of prejudice inquiry" to apply when determining whether a sentence imposed under former section 1170, subdivision (b), could stand. (*Lynch, supra*, 16 Cal.5th at p. 746.) *Lynch* held that "under the current statute a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established. The violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements. If the reviewing court cannot so determine, applying the *Chapman* [*v. California* (1967) 386 U.S. 18] standard of review, the defendant is entitled to a remand for resentencing." (*Id.* at p. 768.)[10]

---

defendant, (ii) found true beyond a reasonable doubt at trial by a jury, or (iii) found true beyond a reasonable doubt by the judge in a court trial."

 [10] *Lynch* also held that even if a reviewing court can determine beyond a reasonable doubt that all of the aggravating factors would have been found true, a remand is still required unless "the record . . . clearly indicate[s] that the [trial] court would have found an upper term justified had it been aware of its more limited discretion" resulting from the presumption against upper-

As we already said in our July 2022 opinion, we agree with Tooker that four of the aggravating factors at issue were not presented to the jury and might not have been found true if they had been. As the Attorney General effectively concedes, the jury did not make findings establishing that Tooker threatened or dissuaded witnesses from testifying, that his crimes involved "planning, sophistication, or professionalism," that M.A. "was particularly vulnerable," or that Tooker's "violent conduct . . . indicates a serious danger to society." (Rule 4.421(a)(3), (6), (8), (b)(1).) The evidence that Tooker threatened or dissuaded witnesses from testifying and that the crimes involved "planning, sophistication, or professionalism" was not so overwhelming that we can say beyond a reasonable doubt that the jury would have found those factors true. (Rule 4.421(a)(6), (8).) As Tooker points out, the prosecution elected not to charge him with any crimes based on his conduct in jail, and the jury rejected the allegation that the attempted murder was deliberate and premeditated. There was also some evidence that his brain injury played a role in the crimes. Similarly, although Tooker's crimes against M.A. were reprehensible, reasonable minds could differ as to whether she was "particularly vulnerable" or whether his focused violence against her "indicate[d] a serious danger to society." (Rule 4.421(a)(3), (b)(1).) Since we are not confident the jury would have found these four factors true, the court could not properly rely on them to impose upper terms, and a remand for a full resentencing is warranted. (See *Lynch, supra*, 16 Cal.5th at p. 768; *People v. Buycks* (2018) 5 Cal.5th 857, 893; *People v. Jones* (2022) 79 Cal.App.5th 37, 45–46 [applying full resentencing rule to remand under Senate Bill No. 567].)

---

term sentences. (*Lynch, supra*, 16 Cal.5th at pp. 743, 773–774.) We need not reach this stage of the analysis to conclude that a remand is required here.

19

For the benefit of the trial court on remand, we also address the remaining two aggravating factors it cited in imposing the upper terms. We agree with the Attorney General that the verdicts necessarily established as true beyond a reasonable doubt under rule 4.421(a)(2) that "[t]he defendant was armed with or used a weapon" during the crimes (weapons-use factor). The jury found that Tooker personally used a firearm in committing criminal threats, and it necessarily found that he used a weapon during the remaining felonies by convicting him of assault with a deadly weapon (the pruning shears) based on the same underlying course of conduct.

If the trial court chooses to do so, it can properly rely on the weapons-use factor to impose the upper term for only some of Tooker's crimes. A court may not rely on an aggravating factor that is "an element of the crime on which punishment is being imposed." (Rule 4.420(h).) Nor may a court rely on an aggravating factor that is "charged and found as an enhancement," unless "the court has discretion to strike the punishment for the enhancement and does so." (Rule 4.420(g); § 1170, subd. (b)(5).) Thus, the court can rely on the weapons-use factor to impose the aggravated term for attempted murder, the strangulation-based assault, and the corporal-injury offense, since use of a weapon was not an element of or enhancement for those crimes. But the court cannot rely on this factor to impose the aggravated term for the assault with a deadly weapon, since the use of a weapon is an element of that crime. And the court cannot rely on it to impose the upper term for criminal threats unless it strikes the punishment for the firearm enhancement accompanying that conviction.

For four of the felonies, the verdicts also established the aggravating factor under rule 4.421(a)(1) that the crimes "involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high

20

degree of cruelty, viciousness, or callousness." The jury found true the enhancement that Tooker "personally inflict[ed] great bodily injury" during the attempted murder, the strangulation-based assault, and the corporal-injury offense. (§ 12022.7, subd. (e)(1).) In addition, the conviction for criminal threats required as an element that he "threaten[ed] to commit a crime which will result in death or great bodily injury to another person." (§ 422, subd. (a).) Thus, the jury found true beyond a reasonable doubt that these felonies involved "great bodily harm" or "threat of great bodily harm" under rule 4.421(a)(1).[11] (See *People v. Burroughs* (1984) 35 Cal.3d 824, 831 ["great bodily harm" and GBI are essentially equivalent].)

Nonetheless, the GBI-related findings alone do not authorize the trial court to impose upper terms for these four felonies. The threat of GBI is an element of the crime of criminal threats, meaning that the court cannot rely on it as an aggravating factor to impose an upper term. (See rule 4.420(h).) And unless the court strikes the punishment for the GBI enhancements accompanying the other three felonies, it cannot rely on those GBI findings to impose upper terms. (See rule 4.420(g); § 1170, subd. (b)(5).)

## III.
### DISPOSITION

The August 5, 2021 order denying mental health diversion is affirmed. The sentence is reversed, and the matter is remanded to the trial court for a full resentencing.

---

[11] As for the assault with a deadly weapon, the jury hung on the allegation that Tooker personally inflicted GBI under circumstances involving domestic violence. Thus, we cannot say that the jury necessarily found this assault involved great bodily harm or threat thereof.

21

_____

Humes, P.J.


WE CONCUR:



_____

Langhorne Wilson, J.




_____

Hill, J.*




     *Judge of the Superior Court of the County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*People v. Tooker*  A163332